Henry **EUBANKS** et ux., Appellants,

v.

W. H. **WINN,** Appellee.

No. 432.

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 16, 1971.

Rehearing Denied July 7, 1971.

John H. Holloway, Houston, for appellants.

L. S. Carsey, Thomas P. Sartwelle, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

BARRON, Justice.

The appellants, plaintiffs in the trial court, have appealed from an adverse judgment in a jury trial arising out of a rear-end collision occurring in Harris County about November 27, 1962, resulting in alleged personal injuries to Mrs. Eubanks and damages to plaintiffs' automobile. Judgment was rendered below in favor of appellants in the sum of $538.00 pursuant to the verdict of the jury. Appellants had sought recovery of $25,200.00. The jury found that the defendant-appellee, W. H. Winn, applied his brakes in a prudent manner under the circumstances; was not operating his vehicle at a greater rate of speed than would a person of ordinary prudence; did not fail to turn his vehicle to avoid the collision in a negligent manner; did not fail to sound his horn immediately before the collision negligently; and that Winn was confronted with an emergency immediately before the collision, but that such emergency was not the sole proximate cause of the collision. The jury, however, found that Winn failed to keep a proper lookout and that such failure was a proximate cause of the collision in question. The jury awarded $100.00 for past and future physical pain and past and future loss or diminished ability to perform household duties; awarded nothing for Mrs. Eubanks' alleged loss of earnings and earning capacity in the future as a result of the accident; awarded $238.00 for past and future medical expenses; and awarded

$200.00 for damages to appellants' vehicle. Mr. and Mrs. Eubanks, appellants, have properly perfected their appeal to this Court.

This is a second appeal in this case. The first trial resulted in a jury finding of unavoidable accident and a damage award of $1,600.00. The first trial resulted in an appeal or review of this case wherein the Supreme Court of Texas, because of post-verdict procedural errors, reversed and remanded the case for a new trial. See Eubanks v. Winn, 420 S.W.2d 698 (Tex.).

Appellants have limited their appeal to alleged error and abuse of discretion of the trial court in admitting certain medical records of a deceased doctor over objections that the records were prejudicial to appellants; and to attacks on the damage findings as being grossly inadequate and conflicting, and as being against the great weight and preponderance of the testimony.

Mrs. Eubanks was allegedly injured in the automobile collision of November 27, 1962 and her suit is based on such occurrence. She was seen by her family doctor, Dr. Ben Laurie, within two hours after the accident. Her testimony shows that she continued to have pain and discomfort, and on December 11, 1962, Dr. Laurie admitted her to Rockglen General Hospital in Houston, where she remained under traction treatment, diathermy, massage, and physical therapy until her discharge on December 16, 1962. She continued under Dr. Laurie's treatment until the doctor died in November, 1963, approximately one year after the accident in question. It is appellee's position that Mrs. Eubanks did not receive any material injury in the collision, and that her medical treatment by Dr. Laurie and her later medical treatment by Dr. Walker, Dr. Sharkey and Dr. Gonzales was not materially related to any injury received in the accident.

After appellant had testified to the facts of the accident and to her claimed injuries, pain and suffering as a result thereof, appellee was permitted to present for identification Dr. Laurie's medical records under the authority of the Business Records Act, Art. 3737e, Vernon's Ann.Tex.St. To qualify the records for admission into evidence, Mrs. Constance Bannister was called as a witness for appellee. Mrs. Bannister testified that she was a medical secretary employed at the time of trial by Dr. H. R. Gonzales who had taken over Dr. Walker's practice, and that at one time she was employed by Dr. Laurie, now deceased. She testified further that she was the custodian of Dr. Laurie's patient records relating to Mrs. Ila Eubanks, including the patient's history and treatment. The records were made in the regular course of Dr. Laurie's practice and business as a physician. The entries in the records were made by persons who had knowledge of the matters which are recorded therein and were entries made at or about the time that the matters recorded were made or took place. On voir dire examination by appellants, however, Mrs. Bannister testified that she commenced her employment with Dr. Laurie in 1959 or 1960. She had no personal knowledge as to the accuracy of the records prior to 1959 or 1960, and the only way she was able to state that the records were patient records of Mrs. Ila Eubanks made by Dr. Laurie was that they were in his office at the time of his death and while she was working for him in the capacity of custodian. She could, however, identify the handwriting of Dr. Laurie and the dates of entry shown in the records. She was custodian of Dr. Laurie's books and records from the date of her employment until Dr. Laurie died in November, 1963. Dr. Lionel Walker, a friend of Dr. Laurie, whose office was nearby, moved into Dr. Laurie's office and took over his records and practice. He used and relied upon Dr. Laurie's records as a part of his treatment of Mrs. Eubanks. The records are divided into two parts, one Dr. Laurie's and one Dr. Walker's. Dr. Walker had written a few things on some of Dr. Laurie's records regarding Mrs. Eubanks.

During Mrs. Bannister's testimony, the records which were marked for identification as Exhibit D–1 were not offered into evidence. The records were later offered and admitted into evidence during the subsequent testimony of Dr. Walker. Dr. Walker, called as a witness by appellants, stated that he keeps office records and notes concerning his patients and that this is good medical practice. He further testified that Dr. Laurie, while he practiced medicine, kept notes and records concerning his patients and that this was in accordance with good medical practice. It was only after Mrs. Bannister and Dr. Walker had both identified Dr. Laurie's records concerning appellant that they were offered and received into evidence.

Appellants contend that the records of Dr. Laurie were inadmissible as business records because Mrs. Bannister, the medical records custodian, was not employed by Dr. Laurie until 1959 or 1960, and because she had no personal knowledge as to the content of the records prior to her employment by Dr. Laurie. The Business Records Act applicable in this state, Art. 3737e, V.A.T.S., reads in part as follows:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition · to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, *custodian* or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility." (Emphasis added).

 Considering the testimony of Mrs. Bannister, the custodian of the Laurie and Walker records, and of Dr. Walker (appellants' witness), we hold that the above facts do not affect admissibility of the records but rather could only affect the weight and credibility of the records as is specifically provided in the statute. Appellants earnestly contend that business records should not be admissible unless each custodian in the chain of custody is produced to testify. Such a requirement, we believe would defeat or seriously impair the intent of the statute and would be an unreasonable or, at times, an impossible burden on the proponent of the records. See University Savings & L. Ass'n v. Security Lumber Co., 423 S.W.2d 287, 290 (Tex.); Martinez v. Williams, 312 S.W.2d 742, 748 (Tex.Civ.App.), writ ref. n. r. e. Moreover, we believe that in this case the rule is applicable that where the existence of a status or a state of things, a personal relation or a custom is once established, it is presumed that such status continues until the contrary is shown, or until a different presumption is raised from the nature of the subject in question. Aetna Casualty & Surety Co. v. Dixon, 145 S.W.2d 620, 624 (Tex.Civ.App.), writ ref. And the above rule does not operate only prospectively but retrospectively, and the circumstances of the case are material and may be considered. Ross v. Green, 135 Tex. 103, 139 S.W.2d 565, 570–571 (Tex.Com.App.), op.

adopted; 1 Texas Law of Evidence, Mc-Cormick & Ray, 2d Ed., Sec. 81, pp. 83–84; Brice v. Edwards, 260 S.W.2d 132, 134 (Tex.Civ.App.), writ ref., n. r. e. We believe that the circumstances of this case warrant admission of the records of Dr. Laurie regarding the general physical condition of Mrs. Eubanks and that the trial court did not err in admitting such medical or business records.

■■■ Appellants further contend that it was error to admit Dr. Laurie's records into evidence because unexplained technical words used in the records permitted the jury to speculate as to appellant's injuries; that the alleged medical opinions expressed in the records were not subject to cross-examination, and, therefore, the records should not have been admitted since the opinions were not well-recognized and reasonably certain. Appellants' related objections were that no proper predicate had been laid for receipt of the records under the statute; notations had been made on the records by persons who were available to testify; and the records were hearsay. When the records were finally admitted during Dr. Walker's testimony, appellants again objected on the grounds that the records of 1954 were not material to any issue in the case; the records had not been properly proven as business records, and no pleadings had been filed by the appellee indicating that appellant's condition was solely related to some source other than the accident of 1962. Specific objections which have been overruled by the trial court will be effective as a ground of complaint on appeal only to the extent of the grounds named. Objections not made are waived. 1 Texas Law of Evidence, McCormick & Ray, 2d Ed., Sections 25, 26 and 27. The burden was upon appellants specifically to object to any part of the records which may have been inadmissible. This was not done under our view of this case except as to May of 1964 in regard to a back condition of Mrs. Eubanks, the objection being that such portion of the records was immaterial to any issue in the

case as related to a neck complaint, an improper objection. In the instant case it was incumbent upon appellants to isolate any portions of the records which were inadmissible or prejudicial and specifically and validly to object to such portions of the records. This they did not properly do, and they have waived any correct objections which they may have had to the records. See Argonaut Southwest Ins. Co. v. Morris, 420 S.W.2d 760, 776 (Tex.Civ. App.), writ ref., n. r. e.; City of Houston v. Wisnoski, 460 S.W.2d 488, 491, (Tex. Civ.App.), writ ref., n. r. e.

■■ Appellants' additional contention is that expressions of medical opinions were contained in the records, and such medical opinions were not admissible because they were not such opinions upon which experts would normally agree. Appellants have failed to cite any entry in the records which appear to be controversial in the sense stated above. Dr. Walker, appellants' witness, testified to almost every entry made in the records and explained such entries. A recorded diagnosis is hearsay evidence but is admissible under Art. 3737e if the diagnosis is one upon which competent physicians would normally agree in the sense above stated. We find nothing in the record which might indicate that the business records show a condition or diagnosis upon which competent doctors would likely disagree, at least in methods or theory. We overrule appellants' contentions. Loper v. Andrews, 404 S.W.2d 300, 305 (Tex.); 44 Tex.L.Rev. 1627; 20 Sw.L.J. 686. And see Otis Elevator Co. v. Wood, 436 S.W.2d 324, 330 (Tex.).

Appellants further contend that the jury's answers to damage issues submitted are grossly inadequate as a matter of law under the evidence and are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. The specific contention is that the trial court erred in overruling appellants' motion for new trial on the above grounds.

There was ample evidence in the record to warrant the jury's findings of a greater sum of damages than were actually found if the jury had seen proper to do so. In addition to the facts stated above, after Dr. Laurie's death appellant was treated by Dr. Lionel Walker, who became her family doctor after the death of Dr. Laurie in November, 1963. Dr. Walker also had treated her while she was under the now deceased doctor's care. He first saw her as his patient on December 4, 1963 with complaints of pain in the neck and nervousness, and he put her on cervical traction at her home. He had seen her forty-six times between January 3, 1964 and March 10, 1966, but a portion of these occasions consisted of treatment pertaining to conditions unrelated to the alleged injuries received by her in the accident of 1962. As of March 28, 1966, Dr. Walker's opinion was that appellant still suffered pain in her neck which radiated into her arms, and headaches, requiring cervical traction and medication. The doctor testified that "Mrs. Eubanks is almost certain to have— to continue to have the pain in her neck for a long, long time in the future. I don't know how long, but indefinitely." Dr. Laurie's records show a minimum of ten office visits associated with her alleged injuries, including cortisone injections, therapy, traction treatments (some of which she took at home), and hospitalization. Mrs. Eubanks testified at length concerning her continuous pain and suffering, her inability to do most of her household duties, and her tenseness and nervousness, all of which would have authorized the jury to award a larger sum.

There were contradictions, however, between Mrs. Eubanks' testimony and the testimony of her doctor, the appellee Winn, the contents of the hospital records, and the medical records of Dr. Laurie. Appellant denied ever having any similar type of neck complaint, headaches or any other condition which disabled her in any way. On cross-examination she admitted that she had experienced prior difficulty with her neck, although according to her testimony, it had not been as severe as her present difficulties. Trial of this case was begun on June 1, 1970. She also admitted that she had been involved in a prior accident wherein she injured her neck, but she testified that she had not received any treatment from Dr. Laurie for this injury. Subsequently, however, she contradicted that testimony when she testified that she had received X-rays from Dr. Laurie but had recovered within two or three days. This testimony was also contradicted by Dr. Laurie's records which indicate that on August 30, 1955, Mrs. Eubanks was complaining of a sore neck and headaches after having been in an automobile accident on August 27, 1955, for which she received diathermy treatments for her neck on many occasions following the 1955 accident. These and similar treatments continued until only a short time prior to the 1962 accident, the basis of this suit.

The record shows that Mrs. Eubanks, at various times, had suffered from back pains, various types of headaches, nervousness, irregular menstruation, indigestion, viral stomach influenza, asthma, general "weakness," a large mass removed from her breast from which she had a thrombophlebitis of her arm (an inflammatory process in the vein of her arm), thyroid trouble, temporal-mandibular arthritis, thrombosis in the vein of her left forearm, emphysema and chronic bronchitis, coughing up blood, paroxysmal irregular tachycardia (a rhythm abnormality in the heart), vertigo (caused by an inner ear problem), inflammation of the gums, mumps, ringing in the ears and various other illnesses, aches and pains. She was treated for each of the above either by Dr. Laurie or Dr. Walker before and after the accident of 1962. She testified that she had been in pain since the date of the accident of 1962 and was unable to do her housework because of the pain from her injuries. However, she testified that she bowled off and on in 1966, approximately once a week, and she had been bowling

regularly until after her testimony in the 1966 trial. Rockglen General Hospital records showed that when appellant was released from such hospital shortly after the 1962 accident, Dr. Laurie had noted her condition on discharge as being "free of pain."

Mrs. Eubanks also denied having been treated for "nerves" prior to the accident, but the record contradicts this statement. Dr. Walker testified in response to appellants' attorney's questions that no restrictions had been placed on Mrs. Eubanks' activities. On cross-examination, Dr. Walker testified that muscle spasm, one of her complaints, could be caused by a congenital abnormality, the aging process or by simple nervous tension. Her headaches could be caused by simple nervous tension. Her doctor testified that many persons are inherently nervous and such nervousness is aggravated by outside sources such as family troubles, existence of a lawsuit and other things. See and compare, Commercial Standard Ins. Co. v. Robinson, 137 Tex. 184, 151 S.W.2d 795, 796 (Tex.Com.App.), op. adopted; Texas Employers' Ins. Ass'n v. Thames, 236 S.W.2d 203, 204 (Tex.Civ. App.), writ ref.

Dr. Walker further contradicted Mrs. Eubanks when he admitted that if she had been free of pain for a period of time, it would be reasonable to assume that the tenderness of the muscles and the associated headaches were due to some other source, such as tenseness or nervousness, rather than the original injury. There was other evidence in the record, favorable and unfavorable to Mrs. Eubanks, which we need not relate.

■ The jury had the right to believe that the accident of November 27, 1962 was of a very minor nature, and that such an accident could not reasonably have caused Mrs. Eubanks the physical injury she complained of. Appellee, Winn, testified that he was almost stopped at the time of the collision, and that the only damages sustained to his automobile were a broken right front head lamp, a dent in the chrome rim around the head lamp, and some small dents in his fender. Mrs. Eubanks' vehicle had a small dent in the bumper and in the tail gate. This testimony was contradicted by Mrs. Eubanks.

We have carefully considered the evidence in this case and have come to the conclusion that the jury was authorized to make the damage findings which it did make. It could have found much more money in damages under the testimony, but it apparently did not think a greater sum of money was proper under the conflicting evidence. Of course, the weight and probative force of evidence is entirely for the jury. No misconduct, passion or prejudice on the part of the jury is shown by the record. The jury is the exclusive judge of the credibility of the witnesses and the weight to be attached to their testimony. It may believe the testimony of one witness and reject the testimony of other witnesses, or it may accept a part of the testimony of one witness and disregard the remainder. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (Tex.Sup.); Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 796–797 (Tex.Sup.). The jury was entitled, if it saw fit, totally to disregard all of appellants' testimony or that of any other witness in this case. See Martinez v. Williams, 312 S.W.2d 742, 746 (Tex.Civ.App.), no writ. The burden of proof was on the appellants.

Regardless of our power under the points of error presented, we are persuaded that it would be unjust, improper, and not in accord with the facts as found for this Court to reverse and remand this case for a third trial in view of the disputes, inconsistencies and conflicts in the testimony, and we decline to do so in view of the jury's findings.

For the reasons above stated and considering the entire record, the judgment of the trial court is affirmed.