LONE STAR GAS COMPANY,
Appellant,

v.

The HOWARD CORPORATION,
Appellee.

No. 8418.

Court of Civil Appeals of Texas,
Texarkana.

Aug. 30, 1977.

Rehearing Denied Sept. 27, 1977.

Joe N. McClendon, Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

Roach & Robertson, Dallas, for appellee.

RAY, Justice.

This is a suit by the seller of gas, The Howard Corporation, appellee (plaintiff), against the buyer, Lone Star Gas Company, appellant (defendant), to recover the differ-

ence between the price actually paid by Lone Star to Howard for gas sold by Howard to Lone Star in Scurry County from January 1, 1973, through June 30, 1975, in intrastate commerce and the price Howard contends Lone Star was required to pay under the "favored nations" provisions of the contract. The quantum of gas actually sold and delivered and the price actually paid by Lone Star to Howard were stipulated. After a trial before the court, judgment was rendered in favor of Howard against Lone Star for increases in price under the favored nations clause, amounting, after a remittitur, to $46,121.32 plus interest and attorney's fees. Findings of fact and conclusions of law were made and filed. Appellant, Lone Star Gas Company, has perfected its appeal and submits thirteen points of error for our consideration.

The dispute in this case is over the existence and sufficiency of facts necessary to trigger the favored nations clause in the intrastate gas purchase contract between the parties.

■ A favored nations clause is a vendor protection clause. It enables the vendor to receive the benefit of increases in the market price of his product over the term of a long range contract with a purchaser. A three-party favored nations clause enables a vendor to receive the benefit of a higher than contract price paid by *any* purchaser. A two-party favored nations clause restricts the vendor to the benefit of higher than contract price paid by his contract purchaser. The instant case is concerned with a two-party favored nations clause. The contract provides the following:

"*COMPARATIVE PRICE ADJUSTMENTS: If,* at any time or times, *subsequent to* the date of the execution of *this agreement* and so long as gas is delivered hereunder, *there shall be in effect any agreement between Buyer and any other producer* or producers of gas providing *for the purchase of gas produced in District 8* of the Railroad Commission of Texas, as presently constituted, *at a price per one thousand (1,000) cubic feet higher than the price per one thousand (1,000)*

*cubic feet, payable at the same time hereunder and for gas of a like character* taken under substantially similar provisions relating to delivery, pressures, quantity, compression requirements, and primary term of contract, then Buyer will thereupon increase the price thereafter payable hereunder so that it will equal the price payable at the same time under such other agreement, and such higher price hereunder shall continue in effect during the remainder of the primary term of this contract so long as any such higher price is paid for gas by Buyer under any such other agreement." (Emphasis added.)

It was stipulated that the "comparative price adjustments" clause was part of the contract between the parties. The parties further stipulated the amount of gas sold and the price paid under the contract, as well as the existence of eight separate contracts entered into by the appellant for the purchase of gas from other parties. There is no dispute over the price payable under these contracts. Dispute arose from the appellee's contention that the subsequent contracts of the appellant were sufficiently similar to trigger the favored nations clause and implement a higher price to be paid by Lone Star, the purchaser, to Howard, the seller.

Appellant-purchaser paid to subsequent sellers higher prices for gas than was contracted for with the appellee. The appellant has focused its appeal on the adequacy of the subsequent contracts to meet all provisions of the favored nations clause and implement the higher price in the Howard contract. The appellant's first twelve points of error are essentially "no evidence", "insufficient evidence", and "against the great weight of the evidence" attacks upon the findings of the trial court that the gas purchased in the subsequent contracts was of like character and taken under substantially similar conditions to that of the Howard contract.

The appellant has also complained on appeal of the award of attorney's fees against it.

The gas sales contracts of a natural gas company dealing in interstate commerce of gas for resale are controlled by the federal Natural Gas Act, 15 U.S.C.A., Sec. 717, et seq., and are subject to the jurisdiction of and regulation of the Federal Power Commission. *Superior Oil Company v. El Paso Natural Gas Company*, 377 S.W.2d 691 (Tex.Civ.App. El Paso 1964, no writ); *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954). When favored nations clause cases have found their way into the federal courts, the courts have shown great deference for the Federal Power Commission's finding of relative similarity when based upon specialized knowledge gained from experience in regulation or trade practice, and have limited their participation to application of rules of ordinary contract construction. *Texas Gas Trans. Corp. v. Shell Oil Co.*, 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960). The Texas Gas Transmission case presents an example of the U. S. Supreme Court applying contract law in review of a FPC order. The court affirmed the conclusion of the FPC that the favored nations clause being reviewed by the court had not been triggered by redetermination of price under a contract which had antedated the favored nations clause. The clause called for an agreement by the purchaser to buy from another source at a higher price. A price adjustment of a pre-existing contract was held not to be such an agreement as would trigger the favored nations clause.

In an appeal not dealing with questions of law, the FPC appears to have much discretion. A case in which the FPC declined to implement a favored nations clause on a finding of substantial dissimilarity to the alleged triggering contract is *Pure Oil Company v. Federal Power Commission*, 299 F.2d 370 (7th Cir. 1962). The FPC found that the high pressure and great quantity of gas purchased in the subsequent contract were distinguishing features. The Court of Appeals upheld the right of the FPC in weighing comparability to consider all factors the FPC considered relevant in arriving at the value of gas, whether specifically authorized by contract or not.

When the FPC has not contributed its technical expertise, the trial court must weigh similarities as best it can. In *Louisiana-Nevada Transit Co. v. Woods*, 393 F.Supp. 177 (W.D.Ark.1975), a court in such a position construed broadly the requirement of the favored nations clause that any triggering contract be "comparable". The critical inquiry was held to be one of price, not condition. The appellee in the instant case persuasively points out the similarity of the *Louisiana-Nevada Transit* case to the case at bar.

A case in superficial conflict is *Chemplex Company v. Tauber Oil Company*, 309 F.Supp. 904 (S.D.Iowa 1970). Respective conditions were held to more rigorous analysis, and found not to be comparable. As pointed out by the *Louisiana-Nevada Transit* case, supra, the particular favored nations provision in *Chemplex* would impose on the parties all of the same conditions of the triggering contract, thus warranting the scrutiny of these different conditions. The Louisiana-Nevada favored nations clause, as the clause before the court in the instant case, would impose only the higher price of the triggering contract on the parties.

The appellant has attempted to distinguish the *Louisiana-Nevada Transit* case on the basis of the plain language of the favored nations clause. It is urged that the favored nations clause in the instant case is not activated by a showing that the triggering contract contains a higher price, without a further showing that a list of conditions precedent have been satisfied. The essence of the appellant's position is contained in its statement that "in order to maintain an action under such clause Howard was required to prove (1) that the contract relied upon contained an agreement for the purchase of the gas at a price per MCF, *and* (2) that such price was payable for gas taken, *and* (3) that such price was payable for gas of like character to that being purchased from Howard, *and* (4) that the gas was taken under substantially similar conditions as to all of the following:

delivery, pressures, quantity, compression requirements and primary term of contract."

The appellant's first three assertions appear to be in error. The favored nations clause does not require that a subsequent triggering contract express its price in terms of thousands of cubic feet of gas (MCF), but rather that such price be greater than the existing contract price when expressed in MCF. Similarly the clause does not require that subsequent contracts of purchase and sale be for gas of like character, but rather that the gas be of like character when its price per MCF is calculated for purposes of comparison. Neither does the clause require that the gas actually be taken by the purchaser, but rather that there be an agreement for the purchase of gas taken under substantially similar provisions.

The appellant's fourth assertion that the gas must be taken under substantially similar conditions is supported by the language of the contract. The trial court found, however, that this requirement had been satisfied. Such a finding is subject to the same force and dignity as a jury verdict upon special issues, and when supported by competent evidence will not be disturbed on appeal unless so against the overwhelming weight of the evidence as to clearly and manifestly be wrong. 4 McDonald's, Texas Civil Practice, Sec. 16.05; *Paul v. Johnson*, 314 S.W.2d 338 (Tex.Civ.App. Houston 1958, writ dism'd).

The appellant is able to submit discrepancies between Howard and subsequent contracts in several respects, including quantity, quality and point of delivery of the gas. These discrepancies need not, and perhaps cannot, be construed as insignificant by any measure. They did not, however, preclude the trial court's finding of substantial similarity between the contract and conditions under which the gas was taken.

"Substantial" is a relative term susceptible to different meanings according to the circumstances of its use; it must be examined in relation to its context and its meaning gauged by circumstances surrounding the matter in reference. 40 Words and Phrases, Substantial, p. 762, Supp. p. 89; *Smith v. City of Fort Dodge, Iowa*, 160 N.W.2d 492, 497 (Iowa 1968); *Atchison, Topeka & Santa Fe Railway Co. v. Kings County Water District*, 47 Cal.2d 140, 302 P.2d 1, 3 (Cal.1956). It is an elementary principle of contract law that in construing terms of a contract the finder of fact must endeavor to give effect to the intentions of the parties. *Simmons and Simmons Construction Co. v. Rea*, 155 Tex. 353, 286 S.W.2d 415 (1956); *Marcus v. Armer*, 117 Tex. 368, 5 S.W.2d 960 (1928). The trial court cannot be said to have acted without sufficient evidence in construing the conditions under which gas was taken under the Howard and subsequent contracts to be sufficiently similar to trigger the favored nations clause. Under the subsequent contracts a higher price was paid for gas which was ultimately pooled with the Howard contract gas in a common transmission system. The purpose of the favored nations clause was to equalize the prices paid for gas in such situations. The trial court adopted a contractual construction which effectuated this purpose.

The appellant contends that the trial court erred in making an award of $5,000.00 for attorney's fees. By agreement, the attorney's fees issue was submitted for determination by the trial court. The appellant argues that any such determination in this case is violative of Tex.Rev.Civ.Stat.Ann. art. 2226 (Supp.1976–1977).

Article 2226, supra, is the statutory provision for attorney's fees in Texas. It has been interpreted by the courts many times. The law is settled that an award of attorney's fees, not anticipated by contract, cannot stand unless authorized by the statute. *Turner v. Turner*, 385 S.W.2d 230 (Tex.1965); *Wm. Cameron & Co. v. American Surety Co. of New York*, 55 S.W.2d 1032 (Tex.Com.App.1932, opinion adopted). Since the statute is penal in character, it is to be strictly construed. *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893 (Tex.1962);

*Perry v. Leuttich*, 132 Tex. 159, 121 S.W.2d 332 (1938).

Article 2226 allows a claimant to recover attorney's fees in seven specific situations. Included among these is the claim for materials furnished. The appellee argues, and the appellant does not deny, that gas is "material furnished" within the meaning of the statutory provisions. *Texas Gas Corporation v. Hankamer*, 326 S.W.2d 944 (Tex. Civ.App. Houston 1959, writ ref'd n.r.e.) is in accord.

 The appellant affirmatively defends, however, by contending that the gas in the instant case was the subject of a special contract. It has been judicially determined that Article 2226 has no application to a suit based on a "special contract" between the parties. *Meaders v. Biskamp*, 159 Tex. 79, 316 S.W.2d 75, 78 (1958); *Eisenbeck v. Buttgen*, 450 S.W.2d 696 (Tex. Civ.App. Dallas 1970, no writ).

The courts have found a special contract easier to recognize than to define. The definition most often cited is found in 17 C.J.S. Contracts § 10, p. 584, in which it is stated:

"Special contract is one with peculiar provisions or stipulations not found in the ordinary contract relating to the same subject matter. These provisions are such as, if omitted from the ordinary contract, the law will never supply."

See *Ennis Business Forms, Inc. v. Todd*, 523 S.W.2d 83, 88 (Tex.Civ.App. Waco 1975, no writ); *Pines California, Inc. v. Miller*, 446 S.W.2d 91, 95 (Tex.Civ.App. Eastland 1969, no writ); *Eisenbeck v. Buttgen, supra.*

There has been considerable doubt about the scope of the special contract doctrine which, as defined, appears to preclude recovery on any express contract. *Clark Advertising Agency, Inc. v. Tice*, 490 F.2d 834, 838 (5th Cir. 1974).

The courts, however, have often allowed recovery of attorney's fees in contract actions. *Pacific Coast Engineering Co. v. Trinity Const. Co.*, 481 S.W.2d 406 (Tex. 1972); *Page v. Superior Stone Products, Inc.*, 412 S.W.2d 660 (Tex.Civ.App. Austin

1967, writ ref'd n.r.e.); *Zorola v. Bishop & Son*, 401 S.W.2d 713 (Tex.Civ.App. San Antonio 1966, writ ref'd n.r.e.).

The Texas Supreme Court squarely acknowledge the possibility of recovery of attorney's fees in an action founded on an express contract in *Tenneco Oil Company v. Padre Drilling Company*, 453 S.W.2d 814 (Tex.1970). The court there dealt with a contract to drill a test oil and gas well. The "materials furnished" provisions of Article 2226, supra, were not, however, of direct concern because all materials allegedly furnished were actually used by the plaintiff in performance of the contract. In disallowing an award of attorney's fees, the court noted that the statute as it then existed (prior to the 1971 amendment) did not anticipate that corporations could have a claim for "personal services rendered" or for "labor done." Pains were taken, however, to point out the narrow basis of the decision and to preclude its construction as disallowing attorney's fees in all actions based in contract and the court stated the following:

"We are not to be understood as holding that claims for personal services rendered and labor done cannot be founded upon contract. A contract for purely personal services or for labor only will support an award for attorney's fee."

The court then went on to indicate that the enumerated claims permitted under Article 2226 must be the essence of any action in which attorney's fees could be recovered, and the court stated:

"On the other hand, a suit based primarily upon a contract for a product or a general service will not authorize an award of attorney's fee merely because performance of the contract may require employment of others to render personal services or to perform labor."

The court had earlier affirmed a decision of a court of civil appeals which applied substantially similar reasoning in upholding an award of attorney's fees in an action in contract for materials furnished. *Ferrous Products Co. v. Gulf States Trading Co.*, 323 S.W.2d 292 (Tex.Civ.App. Houston 1959),

affirmed, 160 Tex. 399, 332 S.W.2d 310 (1960). The intermediate court had found attorney's fees recoverable in any valid claim for materials furnished without limitations because of the manner in which the claim arose. 323 S.W.2d 292, 297. The language of the Supreme Court in affirming was less expansive, but uncontradictory. The finding of a valid claim for materials furnished under a quasi or implied in law contract was affirmed.

We feel compelled to follow the example of the Texas Supreme Court in *Tenneco* and the Houston Court of Civil Appeals in *Ferrous Products* in looking to the essence of the claim sued upon rather than looking to the contract to ascertain whether it is or is not "special." See *Blackmon & Associates, Inc. v. Cooper,* 445 S.W.2d 577, 581 (Tex.Civ. App. Eastland 1969, writ ref'd n.r.e.).

The cases which have disallowed attorney's fees on a finding of special contract have emphasized elements of the contract providing as consideration for tendered personal services, labors or material, that which could not have been foreseen prospectively as of necessarily equivalent value. Attorney's fees have been disallowed, for example, in actions on employment contracts deemed special by virtue of their provisions for commissions or percentage of profit. *G & W Marine, Inc. v. Morris,* 471 S.W.2d 644 (Tex.Civ.App. Beaumont 1971, no writ); *Pines California, Inc. v. Miller,* supra; *Eisenbeck v. Buttgen,* supra. Similarly, attorney's fees have been disallowed in actions for materials furnished founded in contracts which set prices without any reasonable connection to value. *Roby Industries, Inc. v. Maxwell Electronics Corp.,* 409 S.W.2d 559 (Tex.Civ.App. Dallas 1966, writ ref'd n.r.e.); *Burney v. Ibarra,* 415 S.W.2d 517 (Tex.Civ.App. San Antonio 1967, writ ref'd n.r.e.). These provisions transformed the claim from one for services rendered, or labor performed, under Article 2226, to one for simple breach of contract.

█ The appellant urges that the favored nations clause in the instant case has the effect of making the contract sued upon "special" so as to preclude the possibility of an award of attorney's fees. The contract sued upon may be unusual but it is not special. The favored nations clause has the effect of raising the contract price with the market value of the gas. The claim of the appellee is essentially one for the value of the materials furnished. The disputed clause is one which the law would, in essential effect, imply. Allowance of attorney's fees in this case is consistent with a strict interpretation of Article 2226.

The judgment of the trial court is affirmed.