BOBBIE BROOKS, INC., Appellant,

v.

Joseph GOLDSTEIN, Appellee.

No. 5120.

Court of Civil Appeals of Texas, Eastland.

June 15, 1978.

Rehearing Denied July 13, 1978.

Toby L. Gerber, Berman, Fichtner & Mitchell, Dallas, for appellant.

W. Michael Byrd, Jr., Akin, Gump, Hauer & Feld, Dallas, for appellee.

BRADBURY, Justice.

This is a suit by Joseph Goldstein, plaintiff, against Bobbie Brooks, Inc., defendant, for commissions earned as a salesman and for attorney's fees. The case was tried to a jury which answered all issues in favor of plaintiff. Judgment was entered for Goldstein. Defendant appeals and we affirm.

Commencing in 1959, Goldstein was associated with M & D Simon Company as a salesman of men's sportswear. His commissions were five percent of his sales and he paid his own expenses. Goldstein testified that his five percent commissions were based on 85 percent of "accepted bookings". He said the remaining 15 percent was to cover returns, discounts, cancellations and the like. In 1969, M & D Simon Company was absorbed by Bobbie Brooks, Inc., becoming one of its divisions and continuing to operate under the name of M & D Simon Company.

The principal disagreement between the parties was the method of calculating the commissions on sales for the fall and holiday seasons of 1974. Goldstein testified that when he first was employed by Simon he was guaranteed a commission based on 85 percent of his sales. The agreement was made by Max Simon, one of the founders of the company. Sidney Simon, about 1964, at a sales meeting at the company's national headquarters in Cleveland, Ohio, announced that he was the first signer of NAMAC (National Association of Men's Apparel Clubs) Points of Agreement. The agreement had three basic points, one being the guarantee to salesmen of 85 percent of booked orders. An NAMAC newsletter listing the manufacturing companies who had agreed to the points of agreement was admitted as evidence. Goldstein was a member of the National Association of Men's Apparel Clubs and was a member at the time the points were agreed to by M & D Simon Company. When M & D Simon was merged with Bobbie Brooks, Goldstein said Sidney Simon called to tell him that nothing had changed and everything would remain the same. Goldstein testified that Simon stayed on with the company, he believed, as Chairman of the Board and told Goldstein that all agreements Goldstein had entered into would be the same and none would be terminated.

Defendant's witness, Leonard J. Intelisano, by deposition, testified he communicated with one of their retired salesmen who confirmed that the company had agreed to such points. In his deposition, he was asked:

"QUESTION: 'Do you know if at the present time, or at any time in the past, if the salesmen for M & D Simon were members of that club?'

Your answer?

A  You want me to read it?

Q  Yes, please.

A  ANSWER: 'I know that now because I have read Joe Goldstein's deposition, and apparently, he was involved in it and a number of other older salesmen.' "

Defendant argues that "accepted orders" or "accepted bookings" did not include customer cancellations. The evidence reveals an unusual number of cancellations for the periods material to this suit.

Defendant urges nine points of error. The first point complains of the exclusion of certain testimony offered by the witness, Leonard Intelisano, regarding his definition of "accepted bookings". Intelisano was present and testified but the offered and unadmitted testimony was offered by his deposition. The deposition was not signed. It was not admissible. Rule 209, T.R.C.P.; *Tian v. Warren*, 271 S.W.2d 453 (Tex.Civ.App.—San Antonio 1954, writ ref. n. r. e.). The witness had testified at

length about the same matter and by the use of exhibits, admitted as evidence, had fully developed defendant's position as to "accepted bookings" and "accepted orders". The testimony, not admitted, was cumulative of matters which were otherwise fully developed. There was no error in excluding the deposition. *Cottrell v. Texas Employers' Insurance Association,* 293 S.W.2d 219 (Tex.Civ.App.—San Antonio 1956, writ ref. n. r. e.).

In its second and third points, defendant complains that the trial court improperly refused to admit into evidence two of its exhibits. These related to customer cancellations and defendant says the information in the exhibits would constitute proof of defendant's claim of offset. Defendant argues that these were admissible by the provisions of Article 3737e, V.A.T.S.

■ The records in question, the witness Intelisano testified, were business records kept in the regular course of business of defendant and these records reflected order cancellations made by customers and those made by the company. As the information of these cancellations came into the company office, a decision had to be made by a company employee as to coding a cancellation as having been made by a customer or by the company. To determine whether the cancellation would be charged to the customer or to the company, someone would have to know about that transaction. This information was received in the company office, orally, by telephone, and written communication. The one receiving this information would make a decision in which column, customer or company, it would be listed. Intelisano testified further the company employee making this decision had to secure the information about the transaction from other parties. In *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298 (Tex.1962), the court stated:

> "Some employee or representative who either made the record or transmitted the information to another to record must have had *personal knowledge* of the act, event or condition in order for such record to be admissible under the business records exception to the hearsay rule. Sec. 1(b). For example, a doctor's state-

ment as to whether a patient had or had not lacerations of the face, as to his pulse rate or blood pressure, and as to things that happen within the hospital are within the doctor's or nurse's personal knowledge. However, statements as to how an accident happened or where it happened, age, medical history, etc., do not become particularly trustworthy just because it is hospital routine to record them and they should be excluded. The legislature has provided for their exclusion by the requirement of *personal knowledge* by an employee or representative of the 'business' (e. g., hospital). The latter examples are not within the personal knowledge of the hospital personnel. They have no personal knowledge of how or where the patient was injured."

See *Cooper Petroleum Company v. LaGloria Oil and Gas Company,* 436 S.W.2d 889 (Tex. 1969). In *North Texas Lumber Company v. Kaspar,* 415 S.W.2d 470 (Tex.Civ.App.—Dallas 1967, writ ref. n.r.e.), the court wrote:

> "We hold, as the trial court held, that the excluded portion of the card was inadmissible because there was no proof as to who wrote the information contained in it, nor whether that person had personal knowledge of the information so written . . . ."

It is clear that the employee of defendant who listed cancellations under customer or company headings had no personal knowledge of the transaction to which the information related.

*Eubanks v. Winn,* 469 S.W.2d 292 (Tex. Civ.App.—Houston (14th Dist.) 1971, writ ref. n.r.e.), on which defendant relies, is not in point. In that case, the one making a judgment notation in the medical records was entering a record of an opinion on which there was no disagreement. Also, it was made by one with personal knowledge.

■ Defendant was not injured, even if the exhibits were admissible, because essentially the same information was before the jury by testimony of defendant's witness, Intelisano, and by defendant's other exhibits. *Cottrell v. Texas Employers' Insurance Association,* supra.

Defendant complains of the ruling of the trial court in refusing to admit certain letters as evidence. Plaintiff's attorney had written to defendant stating plaintiff's claim. Defendant replied in two letters setting out his position. The matters referred to in the letters were otherwise before the jury and had been extensively testified to by both plaintiff's and defendant's witnesses and exhibits of both parties. The letters would not have added anything concerning the material issues that was not otherwise before the jury. This point is overruled. Rule 434, T.R.C.P.

In his fifth point of error, defendant says the trial court should have submitted an explanatory definition of the term "accepted bookings".

The NAMAC newsletter listing manufacturers that had endorsed the points of agreement states: "These are the 'POINTS of AGREEMENT'. 1. Guaranteed commission of 85% on accepted orders booked. 2. Territorial protection for salesmen." In an "Editor Reports" column, the following is written: "As is known, the 'points' state that a salesman should be guaranteed commissions on at least 85 percent of his approved orders. Most of the manufacturers with whom this has been discussed have agreed that they ship 95 percent of their orders—and some ship more. They feel this is a fair basis—and make allowances for exigencies, not including of course acts of God."

It is evident that the terms "accepted orders booked", "approved orders", and "accepted bookings" as used in this factual situation were ambiguous. Both parties tendered extensive testimony as to each party's interpretation of these terms. Our Supreme Court in *Trinity Universal Insurance Company v. Ponsford Brothers*, 423 S.W.2d 571 (Tex.1968) wrote: "The jury may, however, resolve an ambiguous intent, and the issue asked about intent as a fact issue." See *Wirtz v. Orr*, 533 S.W.2d 468 (Tex.Civ.App.—Eastland 1976, writ ref. n.r. e.). In *Martin v. Davis Constructors, Inc.*, 552 S.W.2d 873 (Tex.Civ.App.—San Antonio 1977, writ ref. n.r.e.), the court held that if the contract is susceptible of more than one

meaning and is ambiguous, extrinsic evidence was properly admissible to remove ambiguity of words used in the contract and it was for the jury to resolve the issue as to intent of the parties. If the trial court had defined the term "accepted bookings", it would have improperly invaded the province of the jury.

Next, we consider if hearsay testimony was admitted over objection, regarding the terms of the agreement, made by Goldstein with M & D Simon Company, defendant's predecessor-in-interest. Goldstein testified about his relations with M & D Simon, and his agreement with Sidney Simon. Sidney Simon became Chairman of the Board when M & D Simon was merged with defendant's company. Defendant's witness, Intelisano, Vice-President of Finance and Administration for M & D Simon Company, testified he had knowledge of the contract between plaintiff and defendant. He also testified that Sidney Simon was president of M & D Simon Company for a number of years and at time of trial, was chairman of the division. He was asked, "As the president and then the chairman of the M & D Simon Company division, I take it that particularly as president, he numbered among his duties the hiring and firing of personnel. He had some responsibility for that?" He answered, "Yes". Question: "Was he authorized to deal with salesmen and enter into agreements with them?" Answer: "Yes". The conversations testified to by Goldstein constituted operative facts and not hearsay. The point is overruled.

Defendant contends that plaintiff is not entitled to attorney's fees. Defendant says that Article 2226, V.A.T.S., does not authorize recovery of attorney's fees in that plaintiff had a special contract with defendant. Our Supreme Court in *Tenneco Oil Co. v. Padre Drilling Co.*, 453 S.W.2d 814 (Tex. 1970) held that attorney's fees were authorized if the claim falls within any of the classes of cases enumerated in Article 2226. The court also said, "We are not to be understood as holding that claims for personal services rendered and labor done can-

not be founded upon contract. A contract for purely personal services or for labor only will support an award of an attorney's fee." See *Alpert v. Jarrell Carpentry Company,* 510 S.W.2d 136 (Tex.Civ.App.—Dallas 1974, no writ); *Brown v. Cox,* 459 S.W.2d 471 (Tex.Civ.App.—Houston (14th Dist.) 1970, writ ref. n.r.e.). Since the opinion in the *Tenneco* case, Article 2226, V.A.T.S., has been amended. The facts in the instant case arose after the amendment, effective in 1971, when the word "personal" was deleted from the phrase "for personal services rendered." The amendment to Art. 2226, effective in September 1977, has no application here so we look to Art. 2226 as it read in 1974. Plaintiff was a salesman as such and was in direct contact with both customers and company. He employed at his expense and under his supervision other salesmen. The word "services" has a broader meaning than "personal services". The essence of the claim sued upon was for services rendered and is consistent with the provisions of Article 2226, V.A.T.S. *Lone Star Gas Company v. Howard Corporation,* 556 S.W.2d 372 (Tex.Civ.App.—Texarkana 1977, writ ref. n.r.e.). We hold that plaintiff rendered services to defendant during the time in question for which attorney's fees were recoverable by the provision of Art. 2226. Defendant says plaintiff did not make presentment of his claim prior to filing suit. This contention is overruled. Plaintiff's exhibit of October 4, 1974, was sufficient presentment. *King Optical v. Auto Data Processing,* 542 S.W.2d 213 (Tex. Civ.App.—Waco 1976, writ ref. n.r.e.).

■ Defendant complains of the award of prejudgment interest on the narrow ground that plaintiff's principal damage was not determinable and established at a definite time. Both parties cite *McDaniel v. Tucker,* 520 S.W.2d 543 (Tex.Civ.App.— Corpus Christi 1975, no writ). The court stated:

"The test is whether or not the measure of the recovery or claim, and not necessarily the amount of damages, is fixed by the conditions existing at the time the injury arose or was inflicted. If the measure is determinable at the time of the injury, interest is properly award-ed from the time of the injury, and is added by the court to the amount of damages in rendering judgment. *Reed v. Fulton,* 384 S.W.2d 173 (Tex.Civ.App.— Corpus Christi 1964, writ ref'd n.r.e.); *Metal Structures Corporation v. Plains Textiles, Inc.,* 470 S.W.2d 93 (Tex.Civ. App.—Amarillo 1971, writ ref'd n.r.e.); *Beck v. Lawler,* 422 S.W.2d 816 (Tex.Civ. App.—Fort Worth 1967, writ ref'd n.r.e.). In the case at bar, the measure of the recovery was determinable at the time the injury occurred, which was on September 10, 1971, when the work was completed."

The formula, the guidelines, by which the jury ultimately determined the amount defendant owed plaintiff, were known and fixed at the time of plaintiff's termination of employment by defendant. The objective conditions then existed and it was only a matter of the jury applying these to the facts to determine the amount of the indebtedness. *Texas Company v. State,* 154 Tex. 494, 281 S.W.2d 83 (1955); *City of Corpus Christi v. Drought,* 380 S.W.2d 645 (Tex.Civ.App.—San Antonio 1964, writ ref. n.r.e.).

■ In its final point of error, defendant says the trial court erred in not granting a new trial because of jury misconduct as three or four of the jurors used electronic calculators during deliberations. Other jurors by pencil and paper made their calculations and the results were substantially the same. The jury first agreed on the amount of accepted bookings plaintiff had secured then applied 85 percent to the figure and by use of the calculator and manually arrived at the figure to be used in answering Issues 3 and 4. There is nothing to indicate any error in the results. Defendant did not discharge its burden of proving jury misconduct. Rule 327, T.R. C.P.; *St. Louis Southwestern Railway Company v. Gregory,* 387 S.W.2d 27 (Tex.1965).

All of defendant's points of error have been considered and are overruled.

Judgment of the trial court is affirmed.