**SECURITY SOUTHWEST LIFE INSURANCE COMPANY, Appellant,**

v.

**Lilia C. GOMEZ, Individually and as Executrix of the Estate of Jose M. Gomez, Appellee.**

No. 08-88-00040-CV.

Court of Appeals of Texas, El Paso.

April 12, 1989.

Rehearing Denied May 10, 1989.

**506**

William B. Hardie, Jr., Hardie, Hallmark, Sergent & Hardie, El Paso, for appellant.

Doris Sipes, Eugene O. Marquette, III, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

This is an appeal from a judgment awarding benefits on credit life insurance policies issued by the Appellant. We reform the judgment and as reformed, the judgment of the trial court is affirmed.

Security Southwest Life Insurance Company issued the following listed certificates to provide credit life insurance on the life of Jose M. Gomez in connection with bank loans he had obtained:

| Certificate No. | Date | Amount |
|---|---|---|
| 71039 | December 31, 1982 | $ 4,748.99 |
| 70314 | January 3, 1983 | $15,600.00 |
| 70330 | January 24, 1983 | $ 5,805.36 |
| 81806 | August 29, 1983 | $ 3,000.00 |

These were life policies based upon the amount due on the loans at any particular time. Mr. Gomez died on September 26, 1983, from a cardiac arrest which resulted from arteriosclerotic cardiovascular disease.

The insurance company defended on the grounds that Mr. Gomez made misrepresentations as to the state of his health at the time of his applications for insurance. Each certificate contained a statement which Mr. Gomez signed which said:

> By signature hereon, I certify that I have read and understand the provisions of this certificate of insurance, that the information provided herein is true and correct, and to the best of my knowledge and belief I am in good health and free from any disease or physical impairment,

and that I further understand any misrepresentation is material to the risk.

By its verdict, the jury found that Jose M. Gomez represented to Security Southwest Life Insurance Company, in his applications for credit life insurance, that he was in good health and free from any disease or physical impairment and further found that the insurance company relied upon his representation in the issuance of the policies in question. The jury failed to find his representations were false, failed to find they were material to the risk involved, failed to find they were intended to deceive the insurer and failed to find they were intended to induce issuance of the policies by the insurance company.

The Appellant contends, in its first point of error, that there is no evidence to support the answers of the jury and that it was entitled to judgment as a matter of law, and in the alternative, that the verdict is against the great weight and preponderance of the evidence and that it is entitled to a new trial. A point of error which attacks the verdict generally, but not specifically, is too general and overly broad. *Slayton v. White*, 487 S.W.2d 204 (Tex.Civ. App.—Tyler 1972, writ ref'd n.r.e.); *Benefit Trust Life Insurance Company v. Baker*, 487 S.W.2d 406 (Tex.Civ.App.—Waco 1972, no writ). Nevertheless, we look at the argument under the point to determine the actual complaint. *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112 (Tex.1976). We pass upon the no evidence contention under the standards set forth in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). We pass upon the great weight contention under the holding in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The Appellant defended on the ground that the insured, Jose Gomez, intentionally misrepresented the condition of his health at the time he made the applications for the insurance coverage. In such a case, the insurer must plead and prove:

(1) The making of the representation;

(2) The falsity of the representation;

(3) Reliance thereon by the insurer;

**508**

(4) The intent to deceive on the part of the insured in making same; and

(5) The materiality of the representation.

*Mayes v. Massachusetts Mutual Life Insurance Company*, 608 S.W.2d 612 (Tex. 1980). In this case, the insurer obtained favorable findings on elements (1) and (3), but not on elements (2), (4) and (5).

First, we consider the failure to find in Special Issue No. Eleven, that the representation of good health was false. As shown on the insured's copy of the first certificate issued, the term "good health" means "a state of health free from disease or bodily infirmity of a substantial nature which affects the general health of the person and seriously or materially increases the risk to be assumed by the insurer. A good health provision is breached if the applicant is suffering from a serious kind of illness, which continues and eventually causes his death."

▉ A jury's failure to find a fact vital to the party having the burden of proof on the issue need not be supported by affirmative evidence. *Traylor v. Goulding*, 497 S.W.2d 944 (Tex.1973). Nevertheless, we do have the right to review a "non-finding" as well as an affirmative finding. *Cropper v. Caterpillar Tractor Company*, 754 S.W. 2d 646 (Tex.1988). The real question in the no evidence point where the complaining party had the burden of proof, is whether the issue is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694 (Tex.1982).

▉ In this case, Mr. William Coons, Jr., who was in the farm machinery and implement business and who had seen Mr. Gomez about once a week for fifteen years, testified that he thought Mr. Gomez was in good health. Mr. Herbert Lett, a bank vice-president who made three of the loans which resulted in the issuance of three of the certificates in question, testified that Mr. Gomez appeared physically to be in good health to him. Mrs. Gomez testified that her husband worked on his farm up to the day of his death. He was never hospitalized for any of the medical ailments for which he was treated. The proof does not establish that the representation of good health was false as a matter of law.

▉ In considering all the evidence under the great weight contention, we conclude that the failure to find that the representations of good health were false is against the great weight and preponderance of the evidence. Counsel for Appellee, by use of depositions, placed in evidence the testimony of Dr. John A. Rodriguez and Dr. Charles Logsdon. In doing so, she offered the entire deposition testimony, not just the favorable testimony, and thereby made all of the answers as evidence of the Appellee. While a party is bound by its own evidence, normally it is bound only by that part of the deposition which it offers into evidence. *Polasek v. Quinius*, 438 S.W.2d 828 (Tex.Civ.App.— Austin 1969, writ ref'd n.r.e.). In this case, the Appellee offered the entire deposition and is thus bound by all of the answers.

Dr. John A. Rodriguez was Mr. Gomez' family physician who treated him from 1962 to April 1983. He said he saw Mr. Gomez more than a dozen times in 1966 for hypertension. He saw him again in 1974, 1976 and 1978 for that same problem. He saw him several times in 1973 for high blood pressure. In 1981, the patient had problems with angina pectoris which the doctor described as a coronary disease consisting of occlusion or partial occlusion of the coronary arteries. He prescribed nitroglycerin. The doctor was asked about the representation on the insurance application and testified as follows:

Q: Well, if you could answer my question specifically as to whether or not representing that he was in good health and free from any disease or physical impairment, whether or not that would have been a true statement?

A: Well, it wouldn't be a true statement saying that he was in good health.

The doctor identified disability claims forms he had filed for Mr. Gomez and said he was of the opinion that in 1982 and 1983, Mr. Gomez was totally and permanently disabled. One form dated December 10, 1982, was signed by Mr. Gomez and stated he had been totally disabled since 1975. A

month later he signed a similar form and placed three x's on the blank line for a date when he would resume some work.

Dr. Charles Logsdon, a cardiologist, reviewed an EKG from Mr. Gomez and concluded that he had ischemic heart disease. He reviewed Dr. Rodriguez' records and said "[m]y impression is that Mr. Gomez had coronary artery disease." He further testified as follows:

A: If he died of coronary artery disease, he probably did suffer from it for some time before he died.

Q: Okay. Would that probability include the months of December through —of '82 through March—

A: Yes.

Q: —of '83?

A: Yes, it probably—it probably would include most of the time if not all of the time that he was under treatment by Dr. Rodriguez.

.    .    .    .    .

Q: Okay. If an individual—Or assuming that Mr. Gomez knew that he had filed claims for total and permanent disability based upon congestive heart failure and assuming that he had filed numerous claims with an insurance company for benefits and assuming from the facts that you see in your records, would you say that Mr. Gomez was in good health in January of 1983?

A: No.

Q: Okay. How about December of 1982?

A: No.

Q: And February of 1983?

A: No.

Q: Okay. The death certificate that you referred to earlier stated that Mr. Gomez died from cardiac arrest due to arteriosclerotic—

A: Heart disease.

Even Mr. Coons testified, on cross-examination, that if Mr. Gomez had the various ailments shown on his medical records, he was not in good health. Mr. Gomez' widow testified that in 1983, he was receiving some type of disability payments from social security and she was never asked and never testified that her husband was in good health when he obtained the bank loans and applied for the credit life insurance. Having set out the evidence at some length as required by the decision in *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex.1986), and having considered all the evidence, we sustain the argument that the jury's answer to Special Issue No. Eleven is against the great weight and preponderance of the evidence.

■ In answer to Special Issue No. Twelve, the jury failed to find that the good health representations were material to the risk involved in issuing the policies. Yolanda Rodriguez, an employee of Security Southwest Life Insurance Company, testified that the company relied upon the good health representations, that such representations were material and that the company would not have issued the policies without these representations. Even the certificates signed by Mr. Gomez read, "I further understand any misrepresentation is material to the risk." There is no evidence to the contrary. We conclude the affirmative of the issue was established as a matter of law. *Allen v. American National Insurance Company,* 380 S.W.2d 604 (Tex.1964); *Estate of Diggs v. Enterprise Life Insurance Co.,* 646 S.W.2d 573 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

The final issue is whether the insurer established, as a matter of law, that the good health representations were intended to deceive the insurer, and if not, was the failure to so find against the great weight and preponderance of the evidence. Mr. Gomez was a farmer who had an elementary education. He had seen Dr. Rodriguez for many years for various ailments, but had never been hospitalized and was able to work until the time of his death. His main purpose in going to the bank was to obtain a loan for his farming operations, not insurance to provide for his family. Unless the giving of a false representation alone establishes an intent to deceive, we cannot say that the issue was proved as a matter of law or that the answer is against the great weight and preponderance of the

evidence. If the false representation alone were enough, the court in the *Mayes* case would not have added the fourth requirement after requirements one and two.

The question of intent to deceive was one for the fact finder, and proof of the intent to deceive was necessary since it could not be automatically inferred even though we conclude that the representation of good health was against the great weight of the evidence. *Sharp v. Lincoln American Life Insurance Company,* 752 S.W.2d 673 (Tex.App.—Corpus Christi 1988, writ denied). Nor may we presume an intent to deceive even though the insured had a long history of heart ailments and made false statements on his application for insurance. *Estate of Diggs v. Enterprise Life Insurance Co.,* 646 S.W.2d 573 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Unlike the facts in the *Sharp* case, in our case the insured had not been hospitalized for the condition which was the cause of death. In our case, the circumstantial evidence is not so strong as to require the trier of facts to conclude that the misrepresentation was so outrageous and removed from the truth that it must have been made with intent to deceive. *Sharp v. Lincoln American Life Insurance Company.* Point of Error No. One is overruled.

The complaint in the next point of error, is that the trial court erred in entering judgment for the plaintiff when there was no evidence submitted and no jury finding on the amount of damages sustained and that there was error in awarding interest and the twelve percent penalty allowed by Tex.Ins.Code Ann. art. 3.62 (Vernon 1981). Basically, the argument is made that certificate 70330 was a decreasing term credit life policy and that it was error to award the face amount of the policy. We agree. The evidence shows the balance due on this loan was $4,515.28. Judgment was entered for $24,405.36 which included $15,600.00 on certificate 70314, $5,805.36 on certificate 70330 and $3,000.00 on certificate 81806. The figure of $5,805.36 should be reduced by $1,290.08 to equal $4,515.28. The twelve percent penalty should be reduced $154.81. Thus the judgment must be reformed to provide that the plaintiff recover $23,115.28 plus penalty of twelve percent which equals $2,773.83.

In addition, the insurer is liable for interest under Tex.Ins.Code Ann. art. 5069–1.03 (Vernon 1987), at the rate of six percent per annum, commencing on the thirtieth day after the sum is due and payable. *Allied Bankers Life Insurance Company v. De La Cerda,* 584 S.W.2d 529 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Interest on the sum owed for four years and two months would equal $5,778.81. Point of Error No. Two is sustained and the judgment will be reformed to provide for a recovery of $23,115.28, plus a penalty of $2,773.83 and interest of $5,778.81 for a total recovery of $31,667.92. We note that the trial court's judgment has provided no recovery for the sum owed on certificate 71039, but the Appellee has no cross-point complaining of that part of the judgment and we may not reverse for unassigned error. *American General Fire and Casualty Company v. Weinberg,* 639 S.W.2d 688 (Tex.1982).

The Appellant contends, in Point of Error No. Three, that the trial court erred in refusing to admit into evidence certain exhibits which consisted primarily of a couple of letters written by Dr. Rodriguez and numerous claim progress reports which were sent from his office during a period from late 1981 through early 1983, and which reflected his diagnosis of the physical condition of Mr. Gomez and his opinion that the patient was totally and permanently disabled. These exhibits were attached to the deposition of Dr. Rodriguez. We find no error in the trial court excluding these particular exhibits. The evidence does not reflect that the proper predicate was laid to establish these exhibits as business records as required by Tex.R.Civ.Evid. 803(6). But, even if the predicate had been laid, there would be no error because Dr. Rodriguez was questioned extensively in his deposition about each of these exhibits and their contents and the evidence was before the jury. Therefore,

any error which may have resulted from their exclusion was harmless since the same evidence came in from the unchallenged testimony of Dr. Rodriguez concerning the contents of each document. *Bobbie Brooks, Inc. v. Goldstein,* 567 S.W.2d 902 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); *Mendoza v. Varon,* 563 S.W.2d 646 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r. e.). Point of Error No. Three is overruled.

The Appellant contends in Point of Error No. Four, that the trial court erred in allowing Appellee's counsel, in her jury argument, to comment on the failure of the defendant to introduce any records showing that Mr. Gomez was not in good health at the time he filed for credit life insurance. The point cannot be sustained. Appellant fails to cite any reference to the record where such argument was made. Appellant acknowledges that no objection was made to the improper jury argument, nor was any request for an instruction to disregard such argument made to the trial court. We conclude that error has not been preserved. But, in any event, the record does reflect that the jury had before it two exhibits prepared by the office of Dr. Rodriguez and signed by Mr. Gomez which reflected the doctor's opinion that the patient was totally and permanently disabled. Point of Error No. Four is overruled.

The next complaint is that the trial court erred in refusing to instruct the jury that an applicant for insurance is under a duty to read the answers written in his application before signing it, and his failure to do so results in his being bound by the answers as made. We find no error. There was never any contention that Mr. Gomez failed to read the policy or certificates in question and we have previously held that he and his estate are bound by the answers which he made in the certificates of insurance.

The Appellant also complains of the submission of certain special issues which the trial court submitted. Although the Appellant raised various objections to these issues, general objections which fail to clearly point out particular errors are insufficient to preserve error for purposes of appeal. Tex.R.Civ.P. 274. The court's charge did submit the controlling issues including each of the elements of the defense relied upon by the Appellant. Point of Error No. Five is overruled.

In its last point of error, the Appellant asserts the trial court erred in admitting into evidence two master group credit life policies involving the Appellant as insurer and the two banks as creditors. Again, we find no error. The four certificates which were issued to Mr. Gomez resulted from the insurance company having the master policies with the banks from which he borrowed money. There was never any question about the validity of the master group policies, and the controlling issues in the case arose out of the four certificates issued to Mr. Gomez and the requirement in each of those certificates concerning good health. Any error in admitting the two policies was harmless. Point of Error No. Six is overruled.

The judgment of the trial court is reformed and as reformed, is affirmed.