BENEFIT TRUST LIFE INSURANCE
COMPANY, Appellant,

v.

Richard E. BAKER, Jr., Appellee.

No. 5183.

Court of Civil Appeals of Texas,
Waco.

Nov. 9, 1972.

Cantey, Hanger, Gooch, Cravens & Munn, Robert S. Travis, Fort Worth, for appellant.

Bradley & Robbins, Terry Bradley, Cleburne, for appellee.

HALL, Justice.

The defendant, Benefit Trust Life Insurance Company, appeals from a judgment awarding plaintiff, Richard E. Baker, Jr., a recovery on a policy of insurance issued by defendant which provides benefits for plaintiff for loss of time from work caused by accidental injury or sickness. Insofar as pertinent, clause "E" of the policy provides for payment of the following benefits:

E(1)(a). Total Disability Benefits: $100 per month for a continuous period of total disability caused by accidental injury which begins within 20 days of the date of the accident. The maximum term of payment for any one accident is "lifetime."

E(1)(b). Delayed Total Disability Benefit: $50 per month for a continuous period of total disability caused by accidental injury which begins within 100 days of the date of the accident, if there was no total disability within 20 days of the date of the accident. The maximum period of payment for any one accident is three months.

E(2)(a). Monthly Sickness Benefit: $100 per month for a continuous period of disability caused by sickness. The period of payment for any one period of disability caused by sickness shall not exceed twelve months.

"Accidental injury" is defined in the policy "as bodily injury brought about by an accidental cause and not otherwise." "Period of total disability" is defined as meaning the period during which the accidental injury, independently of all other causes, prevents plaintiff from performing every duty of his occupation. After the first 12 months of such period, it means that period during which the injury, independently of all other causes, also prevents plaintiff from engaging in any occupation or work for wages or profit. "Period of disability" caused by sickness is defined as the period during which such sickness prevents plaintiff from engaging in any occupation or work for wages or profit.

Plaintiff pleaded the policy and alleged that on December 12, 1966, he sustained an accidental injury which caused him total disability; that the disability began within twenty days of the accident; that by reason of the policy and the accident defendant has become liable to pay him the sum of $100 per month for the remainder of his life from the date of the accident; that defendant paid twelve monthly payments of $100 each but has failed and refused to make any additional payments and has denied liability for further payments. Plaintiff sought recovery of alleged delinquent payments, with interest thereon, "12% statutory penalty, reasonable attorney's fees, and an order requiring defendant to pay plaintiff $100 per month for balance of his natural life," and costs of court.

Defendant answered with a general denial; and expressly denied liability on the grounds (1) that any period of total disability suffered by plaintiff did not begin within 20 days from December 12, 1966, (2) that after December 12, 1967, plaintiff engaged in "occupation or work for wages or profit."

Trial was to the court without a jury. Findings of fact and conclusions of law were not requested by either party. However, the following findings and conclusions were expressly set forth in the judgment, which was rendered on May 31, 1972:

"(a) That Plaintiff was totally and continually disabled within the meaning of the policy from engaging in any substantial part of his work and is presently totally disabled from any occupation or work for wages or benefits, and that such disability began within twenty (20) days after the occurrence of the injury on December 12, 1966.

"(b) Plaintiff is entitled to a judgment for the immediate three (3) year period prior to suit being filed, at the rate of $100.00 per month, or $3,600.00, plus $900.00 which is the amount due from September 2, 1971, to June 1, 1972, or $4,500.00.

"(c) Mr. Baker's injury was the sole and only cause of Plaintiff's disability and that he executed reasonable diligence in notifying the Defendant of the injury and claim in connection therewith, and the Defendant's denial of the claim constituted a waiver of any further notice.

"(d) The insurance policy is a divisible contract with regard to the benefits that accrue hereunder, and that the Plaintiff is entitled to such benefits from June 1, 1972, at the rate of 100 per month as long as his disability continues in a degree which prevents his engaging in a substantial part of his occupation for wages or benefits.

"(e) The Plaintiff is entitled to recover a reasonable attorney fee from the Defendant, and that a reasonable attorney fee is $750."

No other express findings or conclusions appear of record.

The judgment awards plaintiff $4,500 under the contract of insurance, plus $750 attorney's fees and costs of court, and then provides *"that the Plaintiff also recover judgment against the Defendant for the sum of $100 a month, payable on the first day of each month hereafter beginning June 1, 1972, and as long hereafter as Mr. Baker's disability continues in a degree which prevents his engaging in a substantial part of his occupation for wages or benefits. Mr. Baker's, present condition will be presumed to exist until changed by agreement of the parties, or by a subsequent suit in a Court of competent jurisdiction."* (Emphasis supplied.)

Defendant predicates its appeal on these three points of error:

"1. The judgment, in part, looks to future events and is beyond the jurisdiction of the trial court.

"2. Appellee has waived recovery under the provisions of the policy.

"3. The evidence is insufficient to support judgment for appellee."

■ A point of error in which the assertion is made that the evidence is factually or legally insufficient to support the judgment of the trial court does not present a justiciable question. McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643, 646 (1957); Phillips v. Le Gallez (Tex.Civ. App.—Waco, 1959, no writ hist.) 329 S. W.2d 922, 925; Smith v. Dye (Tex.Civ. App., 1956, no writ hist.) 294 S.W.2d 452, 459; Pleasant Grove Builders, Inc., v. Phillips (Tex.Civ.App., 1962, writ ref., n. r. e.) 355 S.W.2d 818, 820; Muncy v. General Motors Corp. (Tex.Civ.App., 1962, no writ hist.) 357 S.W.2d 430, 434; Golden State Mutual Life Insurance Company v. White (Tex.Civ.App., 1964, writ ref., n. r. e.) 374 S.W.2d 901, 904; Wagon Wheel Club, Inc., v. Restaurant Equipment & Supply Co. (Tex.Civ.App., 1967, no writ hist.) 410 S.W.2d 788, 789; Green v. Maxwell (Tex.Civ.App., 1968 writ ref., n. r. e.) 423 S.W.2d 384, 385.

Nevertheless, a review of the entire record reveals that none of the findings, express or implied, made by the trial court in support of the judgment are against the great weight and preponderance of the evidence. Summarized, the record shows that on December 12, 1966, plaintiff tripped on some equipment, fell to the ground, and injured his back while working as a Yard Clerk for the Santa Fe Railroad Company. "Immediately" thereafter the muscles in his back and legs began tightening and contracting, causing severe pain, and he became "all bent over" and "out of shape," and reduced from his normal height of six feet to a height of about four and one-half feet. He was treated by the company doctor from the day of injury until January 27, 1967. During that time, plaintiff attempted to continue working. From January 27, 1967 until June, 1969, he was in and out of the hospital 32 times. Twice, during that time, surgery was performed on his back. The first operation, in January, 1968, involved the removal of the disc between the 5th lumbar vertebra and the sacrum. The second in June, 1969, resulted in the removal of the disc between the 4th and 5th lumbar vertebrae, a fusion of those vertebrae with each other and the sacrum, and the permanent placement of four two-inch silver screws in the vertebrae. Although plaintiff's body is now straight he still suffers severe pain, cannot lift, stoop, bend or squat, and is a "hopeless cripple."

The parties stipulated that $750 is a reasonable attorney's fee.

Defendant's third point of error is overruled.

The circumstances upon which defendant bases its waiver assertion in the second point of error are these: In a letter to plaintiff dated April 13, 1967, which enclosed defendant's first $100 check for plaintiff's disability, the company's claim representative advised plaintiff as follows:

"You are presenting your claim under the monthly accident benefit part of your policy. However, when the total inability to work commences more than 20 days but within 100 days after the date of the accident, the monthly accident benefit in the section under Delayed Total Disability, provides only one-half the monthly benefit for a period not to exceed three months.

"You state that your accident happened on December 12, 1966. However, you continued to work until January 27. This means that your absence from work commenced more than 20 days from the date of the accident.

"For this reason, we suggest that it is to your advantage to submit your claim under the monthly sickness benefit part of the policy. In this way you will be eligible to a full monthly benefit for a period substantially longer than that provided in the Delayed Total Disability section of the Monthly Accident Benefit.

"You may evidence your agreement to our handling of your claim under the monthly sickness benefit part of your policy by cashing the enclosed check."

Plaintiff cashed the check, and received regular monthly checks of $100 from defendant for twelve months. The last check was received on April 10, 1968, with a letter from defendant's assistant vice-president informing plaintiff that he had received the maximum amount payable for his "present period of disability."

Waiver is a matter of intention, and is a question of fact where it is a matter of inference from the record. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). There, the court said:

"A waiver takes place where one dispenses with the performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, *with full knowledge of the material facts,* does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsist-

ent with the right of his intention to rely upon it." (Emphasis added.)

Defendant had the burden of proof on the issue of waiver. The real question presented by its second point of error, therefore, is whether the record establishes as a matter of law that plaintiff waived recovery of the benefits he now seeks. Williams v. Bailey (Tex.Civ.App., 1971, writ ref., n. r. e.) 471 S.W.2d 446, 447. We hold that it does not.

The primary fact upon which defendant claims plaintiff elected to waive disability benefits caused by accidental injury is defendant's representation to plaintiff that if he "worked" until January 27th, then, he could not have been totally disabled within twenty days after his injury on December 12th. This was a misconstruction of the term "period of total disability" as defined in the policy, and a specious half-truth.

The only evidence on the question shows that plaintiff's efforts to continue working after his injury were on a part-time basis, were extremely limited by his injury because he was in great pain and "twisted like a pretzel," were made under economic duress, did not involve the performance of his duties as Yard Clerk, and were made while plaintiff was disabled from performing the duties of Yard Clerk. There is additional evidence that plaintiff did not learn until long after defendant ceased paying benefits that merely because he attempted to work within 20 days after his injury and was paid for it did not, per se, deprive him of total disability benefits under the policy.

In our opinion, there is no evidence that plaintiff "with full knowledge of the material facts" chose a limited term of sickness benefits while intending to relinquish his right to disability benefits flowing from the accident. In any event, at most, the evidence raises a question of fact as to such waiver. The question was impliedly resolved against defendant by the trial court in its judgment. Renfro Drug Co. v.

Lewis, 149 Tex. 507, 235 S.W.2d 609, 613 (1950).

Defendant's second point of error is overruled.

In its first point of error, defendant challenges that portion of the judgment we have emphasized, above, which awards future benefits and which presumes continuing disability, as being outside the power of the court to render. Responding, plaintiff asserts, in effect, that the express denial of liability by defendant on the ground that he was not disabled within the meaning of the policy within twenty days after injury is an anticipatory breach of the contract of insurance by defendant, and entitles plaintiff to recovery of monthly benefits which have not yet matured. We do not agree with plaintiff's contention.

The basis of plaintiff's argument for a judgment allowing recovery of unmatured benefits is identical with that made by the insured in Sanders v. Aetna Life Ins. Co., 146 Tex. 169, 205 S.W.2d 43 (1947), under facts that are substantially the same as those, here, insofar as controlling. In that case, the Court disallowed such recovery, and said:

"The contention of Sanders that he should be awarded a lump sum recovery by this Court for the full fifty months of disability on the ground of anticipatory breach cannot be sustained. The insurance company has not repudiated the policy, but it stands on it and denies that the facts entitle Sanders to recover thereon. In that situation Sanders is not entitled to a judgment for unmatured installments.

"Notwithstanding the finding of (disability within the terms of the policy) in this case, the insurance company would have had the right, upon request, to have a saving clause inserted in the judgment to prevent such finding from binding it in future litigation on installments not then matured. * * * A judgment for

unmatured payments would destroy that right."

The ruling in *Sanders* was reaffirmed in Pennell v. United Ins. Co., 150 Tex. 541, 243 S.W.2d 572, 577 (1951); and Continental American Life Insurance Co. v. McCain (Tex.Sup., 1967) 416 S.W.2d 796, 797.

 Moreover, we agree with defendant that the portion of the judgment which presumes continuing disability is in the nature of an advisory opinion on a hypothetical matter; and, as such, exceeds the judicial power of the court. Firemen's Ins. Co., of Newark, New Jersey v. Burch (Tex.Sup., 1968) 442 S.W.2d 331, 333.

The judgment of the trial court is reformed by deleting therefrom that part which requires payment of future disability benefits and that part which presumes that plaintiff's disability will continue. As reformed, the judgment is affirmed without prejudice to the rights of the parties concerning future installments. Pennell v. United Ins. Co., supra.

Reformed and affirmed.