SMI/USA, INC., et al., Appellants,

v.

PROFILE TECHNOLOGIES,
INC., Appellee.

No. 10–99–011–CV.

Court of Appeals of Texas,
Waco.

Jan. 17, 2001.

Rehearing Overruled Feb. 7, 2001.

Gary E. Smith, Graham, Bright & Smith, P.C., Dallas, for appellant.

Alfred Curby Ligon, Houston, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

DAVIS, Chief Justice.

Appellee Profile Technologies, Inc. (Profile) brought a declaratory judgment action against Appellants SMI/USA, Inc. and two of its subsidiaries, Enrichment Resources, Inc. (Enrichment) and Leadership Management, Inc.(Leadership), requesting that the court construe certain distribution agreements and declare such agreements terminated.[1] Profile also asserted claims against Enrichment and Leadership for breach of the agreements, as well as a claim against all the Appellants for breach of an implied covenant of good faith and fair dealing. At the conclusion of a bench trial, Profile withdrew its claims for damages and proceeded only on its declaratory judgment action against the Appellants. The trial court rendered judgment declaring the licencing agreements terminated, and the Appellants brought this appeal.

## FACTUAL AND PROCEDURAL HISTORY

Profile is a Texas corporation that develops aptitude and personality tests for use by employers in evaluating potential employees. SMI/USA is a Texas corporation that markets and distributes such tests. In 1972, Profile and SMI/USA executed an agreement allowing SMI/USA to distribute Profile products in the United States (the SMI agreements). Those agreements were subsequently terminated by the mutual agreement of the parties. PEI is a Canadian company also engaged in the business of marketing and distributing such tests.[2] In 1987, Profile entered into two agreements with PEI (the PEI agreements) which granted PEI a nonexclusive right to print, market, and distribute Profile's personality tests and the software used to grade the tests in the United States and an exclusive right to do so in Canada, France, Australia, and Great Britain. Each agreement stated that it was to continue until "cancelled by mutual agreement or terminated for cause as set out in this memorandum." However, the agreements did not define the term "cause," nor did they delineate a process for termi-

---

1. When referred to collectively, SMI/USA, Enrichment, and Leadership will be hereinafter designated as "Appellants."

2. PEI is an acronym for Profile Evaluations, Inc.

nation. On January 15, 1993, PEI entered into a contract assigning all its rights under the PEI agreements to Enrichment.

On January 31, Profile's President and CEO, Milton Cotter, sent a letter to PEI stating that the PEI agreements were cancelled, effective February 28. As grounds for cancellation, the letter recited lack of performance, "non-fulfillment of various other provisions of the contract," and certain errors contained in the printed test booklets and the software distributed by PEI. A copy of the letter was also sent to a representative of Enrichment, as PEI's assignee. On February 18, Cotter sent a letter to PEI further detailing the basis for Profile's termination of the PEI agreements. The letter's stated reasons included an alleged failure of PEI to devote its best efforts to market the tests in the distribution territory, failure to pay royalties in a timely manner, failure to provide certain customer information to Profile, failure to keep certain provisions of the distribution agreements confidential, and failure to allow Profile advance approval of the printers to be used in printing the test booklets. A copy of this letter was also sent to Enrichment.

Due to its belief that Profile could not unilaterally terminate the agreement, Enrichment treated the agreement as if it were in effect by continuing to distribute the tests (through another corporation, Leadership) and continuing to make corresponding royalty payments to Profile. On March 14, Cotter sent a letter to Enrichment acknowledging receipt of a royalty payment for March and indicating Profile's belief that the payment represented the final royalty payment due under the PEI agreements. For the next several months, Enrichment continued to distribute the tests and make royalty payments to Profile. On September 21, 1993, Profile's attorney sent a letter to Enrichment reiterating Profile's position that the PEI agreements had been terminated. Thereafter, Enrichment continued to tender royalty payments to Profile.

Profile instituted this action in McLennan County District Court on May 16, 1994, seeking a declaratory judgment terminating both the Enrichment agreements and the SMI agreements. In alternative pleadings, Profile sought damages of $200,000 against Enrichment for breach of the distribution agreements or damages of $207,000 for unpaid royalties under the agreements. Also in the alternative, Profile sought $200,000 in damages from the Appellants for breach of an implied covenant of good faith and fair dealing.

One month later, Profile filed a petition for bankruptcy protection in the Fort Worth Division of the U.S. Bankruptcy Court for the Northern District of Texas. The present suit was stayed pursuant to 11 U.S.C. § 362. On June 29, Profile filed a "Motion of Debtor in Possession to Reject Executory Contracts" in the bankruptcy proceeding. The motion sought permission to reject the distribution agreements that are the subject of this action as "burdensome and unnecessary executory contracts" under 11 U.S.C. § 365. That motion was denied. On November 27, 1996, Profile filed a motion to dismiss the Chapter 11 case, indicating that all the remaining claims of Profile's creditors could be satisfied in the ordinary course of its business, and that bankruptcy relief was no longer necessary for Profile to conduct its business affairs. On January 15, 1997, the bankruptcy judge granted Profile's motion to dismiss and lifted the stay on the present action, which was tried to the court on August 10, 1998.

Profile's sole witness at the bench trial was its president and CEO, Milton Cotter. Cotter explained that the agreements executed by the parties granted PEI an exclusive distributorship of Profile products in Canada, France, Australia, and Great Britain in return for a 20% royalty on gross sales and PEI's promise to devote its best efforts to sell the products to sub-distributors and independent agents in its territories. The agreements further required PEI to provide gross sales reports to Pro-

file as well as monthly marketing data reports containing the identity and geographic location of each of PEI's sub-distributors.

Cotter testified that the decision to terminate the agreements was a result of PEI's failure to comply with several provisions thereof. Specifically, Cotter asserted that PEI failed to devote its best efforts to distribute the product in its designated territory, failed to provide sales information or make timely royalty payments, and failed to provide marketing information regarding its sub-distributors. Cotter also complained of the existence of gaps in the sales reports provided by PEI and of PEI's extra-territorial distribution activities.

Cotter testified that his attempt to terminate the agreements was based on his conclusion that PEI's failures of performance provided sufficient cause for termination under the agreements, although he admitted on cross-examination that "cause" is not defined by the agreements. He related his attempts to cancel the agreements by four letters sent to PEI's assignee, Enrichment, in January, February, March, and September of 1993. Each letter was admitted into evidence. Cotter acknowledged accepting and depositing royalty checks from Enrichment for seven months after his decision to terminate the agreement was first communicated to Enrichment, but testified that it was his belief that he could do so without prejudice to his right to terminate the agreements.

At the conclusion of Cotter's testimony, Profile's counsel formally withdrew its claim for damages in open court, stating an intention to proceed solely on its claim for a declaratory judgment that the agreements were terminated. Each attorney then testified to the reasonableness and necessity of his fee. The following exchange then occurred:

[COUNSEL FOR ENRICHMENT]: As I understand the state of the proceedings, the plaintiff has rested after withdrawing its claim for damages. It is now only asking this court to rule whether and when the [PEI agreements] are terminated and when, and also whether or not plaintiff is awarded attorney's fees in the amount of $5,200. The only issue for defendants is whether I'm—we're awarded attorney's fees of $35,000. Have I fairly stated the . . .

[COUNSEL FOR PROFILE]: You have.

[COUNSEL FOR ENRICHMENT]: In other words, there's no—there's no chance of any money damages, no matter how it happens, correct?

[COUNSEL FOR PROFILE]: That's correct.

[COUNSEL FOR ENRICHMENT]: The only issue is whether or not the contracts are terminated and when, right?

[COUNSEL FOR PROFILE]: That's correct.

[COUNSEL FOR ENRICHMENT]: In that case, we rest, Your Honor. Defendant rests.

Appellants rested without calling any witnesses in the case. The trial court rendered judgment that the distribution agreements between Profile and PEI were "cancelled and of no further force or effect." The court also rendered judgment cancelling the agreement between Profile and SMI/USA, however SMI/USA does not attack this portion of the judgment on appeal.[3]

The Appellants filed a "Motion for Rehearing and to Modify, Correct, Reform, Clarify, or Vacate Judgment or for New Trial" in which they challenged the legal and factual sufficiency of the evidence. This motion was overruled by operation of

---

3. A ground of error neither raised by a point of error nor briefed is waived. *See* Tex. R.App.P. 38.1(h); *San Jacinto River Auth. v.*

*Duke,* 783 S.W.2d 209, 209 (Tex.1990) (per curiam).

law. In response to Appellants' timely request, the trial court filed its findings of fact and conclusions of law. Appellants present five issues for review.

## ISSUES PRESENTED

In their first issue, Appellants claim the Findings of Fact filed by the trial court do not sufficiently support the judgment. In issues two through four, Appellants assert the evidence is legally and factually insufficient to support the judgment. Finally, Appellants contend that the bankruptcy court's disposition of Profile's Chapter 11 proceeding bars Profile's state law claims under the doctrine of res judicata.

## SUFFICIENCY OF FINDINGS OF FACT

In their first issue, Appellants claim the trial court's findings of fact do not sufficiently support the judgment. In response to the Appellants' request for findings, the trial court filed the following:

### FINDINGS OF FACT

1. Profile Technologies, Inc. brought this damage suit against SMI/USA, Inc., Enrichment Resources International, Inc.

2. Trial was begun in 170th District Court in McLennan County, Texas, on August 10th, 1998, and with less than two hours of evidence production, the Plaintiff, Profile Technologies, Inc., withdrew its suit for damages.

3. The Defendant put on NO evidence other than its plea for attorney fees.

4. The Court took under advisement the Defendant's plea for attorney fees and later notified the parties that the Defendant, SMI/USA, Inc., Enrichment Resources International, Inc., would be awarded attorney fees in the amount of $7,500.00.

### CONCLUSIONS OF LAW

1. With no other evidence having been presented in said suit, the Court announced in open Court that the agreements between the parties were cancelled and of no further effect as a matter of law.

2. Both parties have submitted prospective judgments to this Court with language which is favorable to each [respective] party.

This Court heard no evidence other than the Plaintiff having abandoned its cause of action for damages and no further testimony from the Defendant, save and except its plea for attorney fees.

Appellants complain the findings of fact are insufficient to support the judgment because "no element of the plaintiff's ground of recovery has been included" in the findings.

 After a judgment is rendered in a bench trial, any party may request findings of fact and conclusions of law. Tex. R.Civ.P. 296. Within ten days of their filing, any party may request additional or amended findings or conclusions. Tex. R.Civ.P. 298. However, the trial court is not required to make findings of fact as to undisputed facts. See Ko v. Chin, 934 S.W.2d 839, 842 (Tex.App.—Houston [14th Dist.] 1996, no writ); Int'l Ins. Agency, Inc. v. Railroad Comm'n of Tex., 893 S.W.2d 204, 212 (Tex.App.—Austin 1995, writ denied.); Briargrove Park Property Owners, Inc. v. Riner, 867 S.W.2d 58, 62 (Tex.App.—Texarkana 1993, writ denied); Howard P. Foley Co. v. Cox, 679 S.W.2d 58, 64 (Tex.App.—Houston [14th Dist.] 1984, no writ). Additionally, because the purpose of findings of fact is to discern the basis of the trial court's judgment, an appellant is not harmed by the absence of findings if the basis of the trial court's judgment is clear. See Las Vegas Pecan & Cattle Company v. Zavala County, 682 S.W.2d 254, 256 (Tex.1984).

 At the time of the judgment, the sole issue before the court was whether the agreements were terminated. The dialogue between the parties' counsel at the close of the evidence, set out above, indi-

cates their concurrence as to the nature of this issue. Furthermore, the testimony of Milton Cotter, the only witness called, was not controverted by the Appellants. We find that because of the undisputed nature of the facts in this case and SMI's failure to controvert the evidence presented by Profile, the trial court was not required to file findings of fact and SMI was not harmed in the absence of these findings. Accordingly, issue one is overruled.

## LEGAL AND FACTUAL SUFFICIENCY

■ In issues two through four, Appellants contend the evidence is legally and factually insufficient to support the judgment, or alternatively that the judgment is against the great weight and preponderance of the evidence. Such an assertion does not present a justiciable question. *Baucom v. Crews,* 819 S.W.2d 628, 631–32 (Tex.App.—Waco 1991, no writ); *Benefit Trust Life Ins. Co. v. Baker,* 487 S.W.2d 406, 408 (Tex.Civ.App.—Waco 1972, no writ) (citing *McWilliams v. Muse,* 157 Tex. 109, 300 S.W.2d 643, 646 (1957)). An insufficiency complaint must be addressed to specific findings of the trial court, not to the judgment in general. *Baucom,* 819 S.W.2d at 632. Issues two through four are overruled.

## RES JUDICATA EFFECT OF THE BANKRUPTCY PROCEEDINGS

In their fifth and final issue, Appellants contend that the doctrine of res judicata bars Profile's state law claims due to the bankruptcy court's disposition of Profile's Chapter 11 proceeding. Profile initially sought bankruptcy protection on June 17, 1994 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. On June 29, Profile filed with that court a "Motion of Debtor in Possession to Reject Executory Con-

tracts." The motion requested the bankruptcy court to render judgment that Profile's termination letters were sufficient as a matter of law to terminate the PEI agreements. In the alternative, Profile's motion sought to reject the agreements pursuant to the provisions of Title 11, section 365 of the United States Code.

Section 365 allows a bankruptcy trustee or debtor-in-possession, subject to the court's approval, to reject certain executory contracts previously entered into by the debtor. *See* 11 U.S.C.A. § 365(a) (West 1993). In reviewing a debtor's decision to assume or reject an executory contract, a bankruptcy court will "examine [the] contract and surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome for the estate to assume it." *In re Orion Pictures Corp.,* 4 F.3d 1095, 1099, 29 C.B.C.2d 1341, 1347 (2d Cir.1993); *see Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309, 12 C.B.C.2d 1202 (5th Cir.1985). On October 26, Judge Massie Tillman denied Profile's motion by a written order, which recited the court's conclusion that "the legislative history of 11 U.S.C. § 365(n), as well as the plain meaning of the section, compels the denial of the Motion."[4] The bankruptcy proceeding was later dismissed on Profile's motion. Because Profile's Motion to Reject Executory Contracts asserted, in part, the same grounds for termination of the agreements as its petition for declaratory judgment in the present action, Appellants argue that the bankruptcy court's denial of the former is res judicata as to the latter.

■ Because the prior proceeding was in Federal bankruptcy court, federal law governs the issue of whether the doctrine of res judicata bars relitigation in state court. *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 715 (5th Cir.), *cert denied,* 423 U.S. 908, 96 S.Ct. 210, 46

---

**4.** Subsection (n), cited by the bankruptcy court, sets forth the rights of a licensee of intellectual property when a debtor is the licensor. The subsection grants such a licen-

see the ability, in certain circumstances, to retain its rights under a licensing agreement despite rejection by the debtor/licensor. *See* 11 U.S.C.A. § 365(n) (West 1993).

L.Ed.2d 137 (1975); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex. 1990). Under federal law, the doctrine of res judicata applies if: (1) the parties are identical, (2) the prior judgment is rendered by a court of competent jurisdiction, (3) there is a final judgment on the merits, and (4) the claims are identical. *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979). Profile contends that the Appellants cannot meet elements two and three and therefore the trial court properly rendered judgment for Profile.

## United States Bankruptcy Court Jurisdiction

■ A bankruptcy court has power to decide "all cases under title 11 and all *core proceedings* arising under title 11, or arising in a case under title 11." 28 U.S.C.A. § 157(b)(1) (West 1993) (emphasis added). A proceeding is "core" if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy proceeding." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987). Although a bankruptcy judge may hear non-core proceedings and make proposed Findings of Fact and Conclusions of Law to the District Court, the judge may not render a final judgment on such claims. *See* 28 U.S.C.A. § 157(c)(1) (West 1993). As a result, a bankruptcy court's disposition of non-core proceedings is not res judicata as to subsequent state court proceedings regarding the same claims. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 189 (5th Cir.1990); *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 984 (5th Cir.1990).

■ As stated above, Profile advanced two alternative grounds in the bankruptcy court for termination of the PEI agreements. The first ground is identical to the claim asserted in the present state court action, and relies entirely on the common law of contracts. With respect to this ground, the motion was not

"core" and the bankruptcy court's denial of it does not preclude a subsequent action in state court based on the same claim. *See Eagle Properties*, 807 S.W.2d at 718. Furthermore, it is clear from the language of Judge Tillman's order that his decision to deny the motion was not based on the first ground advanced therein, but rather on "the legislative history of 11 U.S.C. § 365(n), as well as the plain meaning of the section." Because the court's ruling was based entirely on statutory bankruptcy law, it will not bar a subsequent state court action over which the bankruptcy court could not have exercised jurisdiction. *See id.* We need not address the issue of whether the dismissal of the Chapter 11 proceeding affected the finality of the bankruptcy court's order for res judicata purposes. Appellants' fifth issue is overruled.

The judgment of the trial court is affirmed.

GRAY, Justice, dissenting.

The majority takes SMI *et al.* to the mountain top but refuses to let them enter the promised Land.[1] There is no doubt that the majority agrees with SMI's first issue on appeal. None of the findings of fact support the judgment. With this, I wholly agree. The majority then discusses whether the findings are necessary. The fatal flaw in the majority's logic is that because the evidence presented through the plaintiff was not "controverted," that the facts are "undisputed."

This is not correct. Uncontroverted evidence can be conflicting. Further, if evidence is introduced through the plaintiff's witness, that could defeat the plaintiff's claim, the defendant need not present any additional evidence to prevail. The evidence presented through the only witness was in conflict regarding whether the con-

---

1. Moses, after leading the people of Israel through the desert in search of the promised land, was only allowed to go to the mountain top and view it. Deuteronomy 3:27-28.

tracts had in fact, been canceled.[2] If the findings of fact had actually resolved any of the disputed factual issues necessary in support of the plaintiff's claim, we could imply all other findings necessary in support of the judgment. Not a single finding of fact has anything to do with the elements of the dispute which exist between Profile and SMI. Profile failed to secure any findings in support of the trial court's judgment in its favor. This is no different than if they had presented this case to a jury and the jury answered "no" to questions inquiring about whether the contract had been terminated. In the absence of any finding in support of the judgment in favor of Profile, the only proper judgment, is that Profile take nothing from SMI and a declaration that the contract has not been terminated.

The only issue presented to the trial court for resolution, as expressed by SMI's attorney in the excerpt quoted in the majority opinion, is "whether or not the contracts are terminated and when." The issue was not; could the contracts be terminated; or, will the court terminate the contracts. The judgment states, *inter alia*, the contracts are "as of the date of this Final Judgment, cancelled [sic] and of no further force or effect." Thus, the language of the judgment supports the argument made by SMI that the contracts had not been previously terminated.

Even a casual reading of the majority opinion will alert the reader that there was a real dispute at to whether the contracts had actually been canceled. Profile's witness testified that in 1993, several letters purporting to terminate the contract had been sent to SMI. But, after those "termination" letters were sent, he continued to accept royalty payments. One of these letters was actually sent by his attorney, but it did not state any grounds for termination. Then, in 1994, Profile sued SMI for breach of the very contracts that it now asserts already had been terminated, seeking damages. Thereafter, Profile filed

bankruptcy and sought to terminate the contracts in the bankruptcy proceeding. This relief was denied. While the evidence regarding the bankruptcy proceeding may not constitute a *res judicata* defense, it is still evidence that Profile, as of that date, did not consider the contracts to have terminated. This was the status as of 1997, when the bankruptcy proceedings were dismissed and this case, which had been abated during the bankruptcy, resumed.

This state court action proceeded to trial in 1998 with a claim for damages for breach of the very contracts Profile was claiming had been terminated. Again, the testimony of Profile's witness regarding the claims for damages was at least some evidence that he did not consider that the contracts had actually been terminated.

This was an action to determine and declare the status of the parties with regard to these contracts. The declaratory judgment sought was not that the contracts could be validly terminated or even a judgment of termination, but rather a determination of whether the contracts had been terminated, and if so, when. Instead of deciding the issue presented by the parties by determining and declaring their status, the trial court, on its own, terminated the contract. This is obvious in the choice of terminology in the judgment that "as of the date of the judgment" the contracts are canceled and of no further force or effect. By deciding that as of the date of the judgment the contracts were terminated, the trial court resolved a factual issue about which Profile's witness had presented conflicting evidence, that the contract had not previously been terminated. Upon SMI's timely request, the trial court was required to file findings of fact and conclusions of law that would support the judgment in favor of Profile. This the trial court did not do. Profile failed to request additional findings of fact and conclusions of law that would support the judgment in its favor.

2. The parties and the court use the terms "canceled" and "terminated" as synonymous.

Profile's failure to secure findings of fact and conclusions of law that support the judgment then prevented SMI from being able to attack specific findings as lacking evidentiary support. Because there was no finding which supports the judgment, there were no findings to attack. Therefore, SMI was left with no alternative other than to generally attack the judgment. But, the majority tells SMI that a general attack on the judgment presents nothing for our review. This highlights SMI's harm and is the reason the trial court is required to file findings of fact and conclusions of law in support of the of the judgment. Otherwise, the party cannot properly frame their complaint on appeal by attacking the sufficiency of the evidence to support a particular finding in support of the judgment.

Because the judgment depends upon the resolution of a disputed fact issue, because the evidence on the issue was conflicting, because SMI timely requested findings of fact and conclusions of law, and because the trial court's findings and conclusions do not support the judgment, I would hold that the judgment must be reversed and judgment rendered that Profile take nothing from SMI, and declare that as of the date of trial, the contracts had not been terminated.[3] Because the majority does not, I respectfully dissent.

---

**3.** Of course this would be without prejudice to Profile's rights, if any, to cancel the con-

tracts in the future.