

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00100-CV
_____

IN THE INTEREST OF B.F. AND B.F., CHILDREN

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 92003

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

Father has filed a pro se appeal from the denial of a petition to modify the parent-child relationship. On appeal, Father argues the trial court erred by (1) allegedly failing to uphold temporary injunctions, (2) denying Father's requested relief, (3) limiting Father's access to the children by clarifying how much electronic communication a prior order had given to Father, (4) awarding amicus attorney fees without allowing him the opportunity to object, (5) allowing Mother to reopen the evidence, and (6) awarding attorney fees to Mother. Father also raises complaints about the substantive format of the trial court's findings of fact and conclusions of law.

We find that Father's complaints about the temporary proceedings are moot and that there was no abuse of discretion in the trial court's decision to deny Father's petition. We also find that Father has failed to preserve his third, fourth, and fifth points of error and that the trial court's award of attorney fees to Mother was proper. As for Father's remaining complaints about the trial court's findings of fact and conclusions of law, we find them meritless. As a result, we affirm the trial court's judgment.

## I. Factual and Procedural Background

### A. Proceedings Leading to the Order Father Wanted Modified

Mother and Father were divorced on August 5, 2022. They had mediated their divorce and agreed to all terms of their divorce decree. Pursuant to the agreed decree, Mother and Father were appointed joint managing conservators of their children, eleven-year-old Brian and seven-year-old Belle.

2

Father, an officer in the United States Air Force, was stationed in the Republic of Korea while the divorce was pending but was stationed in Italy when the divorce was finalized. As a result, Father agreed to give Mother the "the exclusive right to designate the primary residence of the children within the geographically restricted area of the continental United States," but, "in the event that [Father] reside[d] within 100 miles of the residence of the children[,] the residence of the children [was] restricted to remain within 100 miles of [Father]'s residence." Even so, the decree provided,

> In the event that . . . [Father] resides within 25 miles of the residence of the children, neither party shall have the exclusive right to designate the primary residence of the children and the parents shall each reside within 25 miles of the residence of the children at the time that [Father] established his residence within 25 miles of the children.

The agreed decree provided for a standard possession order, gave Father the right to "reasonable electronic communication with the children," and set Father's child support obligations.

## B.   Father Filed A Petition to Modify and Agreed to Pay Amicus Attorney Fees

On July 10, 2023, Father filed a petition to modify the parent-child relationship and argued that he should be allowed to designate the children's primary residence without geographical restriction, among other things. Mother answered Father's lawsuit and prayed for attorney fees.[1]

The parties entered and filed a binding Rule 11[2] agreement that provided for the appointment of an amicus attorney. Father made $155,000.00 per year while Mother, who had

---

[1]By agreement, the matter was transferred from the 415th Judicial District Court of Parker County to the 6th Judicial District Court of Lamar County.

[2]*See* TEX. R. CIV. P. 11.

been a stay-at-home mom, was a teacher who made $40,000.00 per year. As a result, the Rule 11 agreement provided that Father would be "responsible for the payment to and expenses for the amicus attorney," unless the trial court later re-assessed the matter and ordered Mother to pay some or all of the fees and expenses. Pursuant to the parties' agreement, the trial court appointed Erin Clegg as the amicus attorney and ordered Father to pay "100 percent" of her fee.

### C. Testimony at Trial Supporting Father

At the final hearing, Father informed the trial court that he wished to move the children to Colorado, where he had lived for just over a year. He testified that he had agreed to allow Mother to have the exclusive right to designate the children's primary residence because of his job, explaining, "[M]ilitary assignments, you can't just go anywhere." However, Father said that he had moved to Colorado and was living with his new girlfriend, Clara, whom he began dating in October 2022. Father testified that his relationship between Clara and the kids was "new . . . still young," but she spent a lot of time with the children and they were becoming accustomed to having her around, adding, "[S]he's with us a lot." Father said he would be retirement eligible in two years and believed it was in the best interests of the children for them to move in with him and Clara. Father said that he had purchased a home in a good school district that had everything the children might need.

Father also complained that the quality of his communications with the children had changed and that he occasionally had difficulty speaking to the children during Mother's period of possession. Father called every morning and evening, but the children would not answer his calls sometimes. To demonstrate that the quality of his communications had changed, Father and

Clara recorded many of his calls with the children, but Father admitted that he did not know if the children were aware that they were being recorded.

Father testified that he decided to file the modification petition when he learned that Belle had slept in the bed with Mother and Mother's boyfriend, which he thought was inappropriate. He learned that Brian had slept alone with Mother's boyfriend in a hotel room once while they were on vacation and Mother and Belle decided to go out and about. Even so, Father clarified that he did not believe that the children were in danger. Father was also concerned about the amount of time the children were spending apart from one another and the time that Brian was spending apart from Mother. Father testified that he believed Brian was sleeping at his maternal grandparent's home (a ten-minute drive from Mother's home), his great-grandparents home, or at a friend's house. Father knew that Brian enjoyed being at his maternal grandparent's house but did not approve of the children spending nights there and did not think that a move to Colorado would impact the children.

Father admitted that Brian and Belle were still going to school in Texas, so he had not had day-to-day involvement with the children while they were in school. Although the children were with him during the summer, Father placed the children in summer camp even though Clara testified that Father had the option to sometimes work from home. Father, who had the children for forty-two days during the summer, chose to work from home only one day each week and took the children to summer camp on the other days when he had to work, although the children stayed with their paternal grandmother at home when she came to visit.

5

Father also admitted that both his children did well in school and made straight A's. Brian had the highest grade in math class and had the highest levels on the State of Texas Assessments of Academic Readiness test. Even so, Father, who would not move back to Texas, believed it was better to uproot the children from their schools.

### D.     Testimony at Trial Supporting Mother

Mother opposed Father's position that moving the children to Colorado was in their best interests and argued that there was no material and substantial change that would justify modifying the terms of the agreed divorce decree. As for the allegation that Belle had slept in the bed with Mother and her boyfriend, Mother explained that Belle had woken up in the middle of the night and had crawled into bed next to Mother while boyfriend was asleep on the other side of Mother. Mother testified that she had removed Belle from the bed and placed her back in her own bed and clarified that neither child had slept the whole night in the bed with Mother's boyfriend. Mother admitted that she had let Brian stay in a hotel room alone with Mother's boyfriend and that she and the children had once all spent the night at Mother's ex-boyfriend's house.

That said, Mother explained that, even though they had lived in different places in the past, moving the children to Colorado was against the children's best interests because they had a great community in Lamar County, she was a teacher at their school and was able to be there with them (although Brian would be going to a different school for the next grade level), and they had family nearby. Mother said that, even though Father was a great dad, the children

should not be made to leave their support system and all their friends because doing so would uproot them.

Mother testified that the children were active in extracurricular activities and that family support came in handy when Brian had baseball and Belle had gymnastics on the same day. According to Mother, the children had a wonderful relationship with their grandparents and great-grandparents, and Brian spent the night with the great-grandparents every Friday because it was a tradition. Mother said Brian and his great-grandparents enjoyed talking about history and that Brian loved going to his grandparents' house because they had a pool and game room. Mother said that she had the "support and village" that she and the children needed and that their close ties with others in Lamar County helped the children excel in the community, school, and sports.

As for Father's complaints about the lessened quality in his conversations, Mother said it was "sometimes hard for [the children] to want to talk to [Father] when [it was] the same question" over and over and Father did not want to talk about what the children were interested in. As an example, Mother explained that when Brian reported to Father that he had gotten the high A in math class, instead of being positive, Father chastised Brian for watching a movie and asked him why he had not done any extra credit work. Mother testified that Brian became "very frustrated that his dad was not excited about him" and was crying after getting off the phone. Mother also said that Brian became upset when he told Father he wanted to be a judge because Father was not encouraging of the idea. When asked, Father did not know the names of the

7

children Brian and Belle played with in the summer while they were in his care and did not know the name of Brian's best friend.

Mother testified that Father spoke with the children mostly twice a day, although there were times when the children were busy and could not talk. Mother said it was hard when Father called in the mornings while the children were getting ready for school. Mother admitted that the children had overheard her fights with Father and that she spoke negatively about Father in front of the children.

Clegg testified that, in fulfilling her duties as amicus attorney, she had spent a considerable amount of time reviewing discovery and meeting with the children. Clegg visited with the children twice while they were living with Father and twice while they were living with Mother. Clegg testified that, after her extensive conversations with the children, she believed it was in their best interests to remain in Lamar County. Clegg testified that the children were thriving in school and had no physical or health impediments.

As for attorney fees, Mother's attorney provided properly detailed and itemized billing records. Mother testified that she had used $49,992.00 from her savings account to pay her counsel in defense of Father's lawsuit.

### E. The Trial Court Rules in Mother's Favor

In its final order, the trial court denied Father's petition to modify the parent-child relationship. The trial court clarified that the prior decree's use of the phrase "reasonable electronic communication with the children" meant "not more than one communication a day with each child between the time the child [was] dismissed from school but no later than

7:00 P.M. in the time zone in which the child reside[d]." The trial court awarded Mother attorney fees in the amount of $23,002.00 and taxed Clegg's costs against Father.

Pursuant to Father's request, the trial court entered findings of fact and conclusions of law, which stated, among other things, that (1) Father did not meet his burden to show that modification of the parent-child relationship was in the children's best interests, (2) good cause existed to award Mother's attorney fees, (3) $23,002.00 was a reasonable and necessary attorney fee, (4) it was in the children's best interests to appoint an amicus attorney, and (5) it was in the children's best interests that Father pay all costs of the case including the amicus attorney's fees.

## II. Father's Complaint About the Temporary Proceedings Are Moot

Father alleges that, in violation of the temporary injunction, Mother made negative comments about Father in front of the children, lied to Father, and withheld information about the children. In his first point of error, Father argues that the trial court erred by failing to uphold temporary injunctions.[3]

We have previously explained that "'complaints about temporary order[s] become moot' on the entry of a final order." *In re N.V.R.*, No. 06-17-00023-CV, 2017 WL 3751525, at *5 (Tex. App.—Texarkana Aug. 31, 2017, no pet.) (mem. op.) (alteration in original) (quoting *In re E.R.C.*, 496 S.W.3d 270, 278–79 (Tex. App.—Texarkana 2016, pet. denied)); *see In re Marriage of Teague*, No. 06-21-00021-CV, 2021 WL 5498121, at *3 (Tex. App.—Texarkana Nov. 24, 2021, no pet.) (mem. op.); *In re D.R.*, 631 S.W.3d 826, 836 (Tex. App.—Texarkana 2021, no

---

[3]We address Father's issues out of order for ease of discussion.

pet.). Because the trial court entered a final judgment in this suit affecting the parent-child relationship, we overrule Father's first point of error as moot.

## III. There Was No Abuse of Discretion in the Denial of Father's Petition

Father's next point of error argues that the trial court abused its discretion "by denying [his] requested relief, given that the 'Findings of Fact and Conclusions of Law' failed to reference evidence presented, applicable legal principles, or precedent to justify the decision, despite testimony and evidence indicating that the requested relief was in the best interest of the children." In other words, instead of analyzing the evidence and applying the proper standard of review, Father argues that the findings of fact are not properly worded. To the extent that Father's brief can somehow be read to raise a proper complaint, we demonstrate why the trial court did not abuse its discretion by denying Father's petition.

A court may modify an order providing for the possession of or access to children "if modification would be in the best interest of the child[ren]" and "the circumstances of the child[ren], a conservator, or other party affected by the order have materially and substantially changed since" "the date of the rendition of the order." TEX. FAM. CODE ANN. § 156.101(a)(1)(A).

"We review a trial court's decision regarding custody, control, and possession matters involving [children] under an abuse of discretion standard." *In re D.W.J.B.*, 362 S.W.3d 777, 780 (Tex. App.—Texarkana 2012, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles." *Id.* (citing *K-Mart Corp. v.*

*Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam); *Holtzman v. Holtzman*, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied)). "Under the abuse-of-discretion standard, 'legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but are not independent grounds of error.'" *In re M.O.*, No. 06-19-00004-CV, 2019 WL 2518470, at *5 (Tex. App.—Texarkana June 19, 2019, no pet.) (mem. op.) (quoting *In re Marriage of McCoy*, 567 S.W.3d 426, 428 (Tex. App.—Texarkana 2018, no pet.)). "In our analysis, we determine 'whether the trial court had sufficient evidence on which to exercise its discretion, and, if so, whether it erred in the exercise of that discretion.'" *Id.* (quoting *In re Marriage of McCoy*, 567 S.W.3d at 428). "Based on the evidence, we then determine whether the court's decision was arbitrary or unreasonable." *Id.*

The trial court found that Father did not meet his burden to show that his request to move the children to Colorado was in the children's best interests. As the recitation of facts above shows, the trial court heard conflicting evidence as to Brian's and Belle's best interests. Father believed that the schools in Colorado were better and that it was in the children's best interests to maintain a closer relationship to him and develop their relationship with Clara. On the other hand, Mother explained that the children were thriving in school, had close family relationships and friends in Lamar County, and participated in extracurricular activities that they enjoyed. Clegg, who had visited with the children and observed them in both Mother's and Father's homes, also believed that remaining in Lamar County was in the children's best interests.

In our analysis, we must "recognize that '[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences

11

that cannot be discerned by merely reading the record.'" *In re M.O.*, 2019 WL 2518470, at *6 (alteration in original) (quoting *In re Marriage of Christensen*, 570 S.W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.)). "We will not find that the trial court abused its discretion 'if there is some evidence of a probative and substantive character to support its decision.'" *Id.* (quoting *In re Marriage of Christensen*, 570 S.W.3d at 937). Here, Mother's and Clegg's testimony was probative and substantively supported the trial court's decision. As a result, we cannot say that the trial court abused its discretion in denying Father's petition.[4] We overrule Father's second point of error.

## IV.    Father Failed to Preserve His Next Three Points of Error

### A.    Preservation

Before presenting any complaint for appellate review, the appellate record must demonstrate that "the complaint was made to the trial court by a timely request, objection, or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1).

### B.    Father's Third Point of Error Was Not Preserved

Next, Father argues that the trial court abused its discretion by limiting Father's access to the children by clarifying how much electronic communication a prior order had given to Father

---

[4]To the extent Father's petition complains of the denial of his requests for permanent injunctions, we overrule it since the evidence supports the trial court's denial of his petition and Father's complaint that requested permanent injunctions should have been granted is conclusory. *See* TEX. R. APP. P. 38.1(i).

in the absence of a request for clarification from either party.[5] Father raised no complaint about the trial court's clarification order below, although he had the opportunity to raise one in a motion for new trial. As a result, we find that Father did not preserve this complaint.

Also, "to avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and the record.'" *Manning v. Johnson*, 642 S.W.3d 871, 884 (Tex. App.—Texarkana 2021, no pet.) (quoting *Delta Cnty. Appraisal Dist. v. PPF Gin & Warehouse, LLC*, 632 S.W.3d 637, 652 (Tex. App.—Texarkana 2021, pet. denied)); *see* TEX. R. APP. P. 38.1(i). In a suit affecting the parent-child relationship, "[a] court may clarify an order rendered by the court in a proceeding under this title if the court finds, on the motion of a party *or on the court's own motion*, that the order is not specific enough to be enforced by contempt." TEX. FAM. CODE ANN. § 157.421(a) (emphasis added); *see In re R.K.F.*, No. 06-23-00072-CV, 2024 WL 2263793, at *2 (Tex. App.—Texarkana May 20, 2024, no pet.) (mem. op.). The record at trial clearly indicates that the parties were not on the same page as to what the term "reasonable electronic communication" meant. In his brief, Father failed to address Section 157.421 of the Texas Family Code, cited no legal authority that is relevant to the issue, and did not conduct a substantive analysis as to why the trial court's clarification was an abuse of discretion.

We overrule Father's third point of error.

---

[5]"[A] trial court's clarifying order [is reviewed] for an abuse of discretion." *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.—Texarkana 2003, pet. denied).

## C.      Father's Fourth Point of Error is Unpreserved

In his fourth point of error, Father argues that the trial court erred by awarding amicus attorney fees without allowing Father to object.[6]  Yet, the record shows that Father did not object when given the opportunity to do so.

By entering into the Rule 11 agreement, Father agreed to pay the amicus attorney's fees. At trial, Clegg testified,

> At this point I have been -- I was paid a $5,000 retainer by the father.  Currently today, I am owed $2,313 plus my time today.  In this I'm at an hourly rate of 425 an hour.  I am a board-certified attorney.  I've been practicing ten years.  I think these attorneys both know my qualifications.

After making this statement, Father said, "We'll stipulate."

Here, the record shows that Father had the chance to object to the amicus attorney's fees at trial or in a motion for new trial but failed to do so.  Because he did not present any complaint about the amicus attorney's fees to the trial court, he has failed to preserve his fourth point of error for our review.  *See* TEX. R. APP. P. 33.1(a).[7]  We, therefore, overrule it.

## D.      Father's Fifth Point of Error is Unpreserved

At trial, Mother's attorney introduced redacted, itemized billing statements showing that Mother was billed $49,992.00, and Mother testified that she had paid that amount to her attorney to defend Father's lawsuit.  Even so, the trial court only awarded mother $23,002.00 in attorney fees.  As a result, Mother filed a motion to reopen the evidence so that she could introduce unredacted billing statements from her attorney so the trial court could "review complete copies

---

[6]Father does not complain about the amount of amicus attorney fees.

[7]Father does not argue how he was harmed in light of the Rule 11 agreement.

14

of the statements already submitted to the Court at the hearing on this matter." Father did not object to the motion to reopen the evidence. Although the trial court granted Mother's motion to reopen the evidence, it did not award Mother any additional attorney fees.

Even so, in his fifth point of error, Father argues that the trial court erred by granting Mother's motion to reopen the evidence without providing him the opportunity to object. Yet, Father, who was represented by attorneys at trial, could have objected to the motion to reopen the evidence and could have also raised any such issue in a motion for new trial but failed to do so. As a result, since the trial court was not aware of Father's complaint, we find the issue unpreserved.

Moreover, Father failed to brief the issue of how he was harmed by the motion to reopen the evidence since the trial court did not award Mother any additional attorney fees. As a result, this issue is also inadequately briefed, and we are not required to conduct Father's harm analysis for him. *See Atkinson v. Land Endeavors, LLC*, No. 06-24-00057-CV, 2025 WL 1773250, at \*9 (Tex. App.—Texarkana June 27, 2025, no pet. h.) (mem. op.) (citing *In re B.B.*, No. 06-22-00029-CV, 2022 WL 5237405, at \*5 (Tex. App.—Texarkana Oct. 6, 2022, pet. denied) (mem. op.)); *see also* TEX. R. APP. P. 38.1(i).

We overrule Father's fifth point of error.

## V. The Award of Mother's Attorney Fees Was Proper

In a suit affecting the parent-child relationship, "the court may render judgment for reasonable attorney's fees and expenses." TEX. FAM. CODE ANN. § 106.002(a). A trial court's decision to award attorney fees to a prevailing party is reviewed for an abuse of discretion while

a challenge to the amount of attorney fees is reviewed for legal and factual sufficiency. *In re H.T.S.*, No. 06-23-00029-CV, 2023 WL 7381409, at *5 (Tex. App.—Texarkana Nov. 8, 2023, no pet.) (mem. op.).

In his sixth point of error, Father raises no cogent argument challenging the amount of attorney fees awarded. Instead, he argues that the trial court erred by awarding attorney fees "without considering the case's merits," providing due process, or considering Mother's rejection of Father's settlement offer, which would have required Mother to agree to move the children to Colorado.[8]

We find that Father's due process argument, complaining of a lack of opportunity to review and object to the attorney fee amount, is unsupported by the record since it shows that Father had ample opportunity to object to the award of attorney fees. Even so, because it was within the trial court's discretion to award Mother attorney fees under Section 106.002 of the Texas Family Code, and Father fails to address this, we find that the trial court did not abuse its discretion by deciding to grant Mother's request for attorney fees. We overrule Father's sixth point of error.

## VI. Complaints About the Findings of Fact and Conclusions of Law Are Meritless

In his remaining points of error, Father argues that the trial court "failed to exercise independent judgment and reasoning by adopting verbatim Mother's Proposed Findings of Fact and Conclusions of Law." Father also argues that the trial court's findings of fact and

---

[8]Father argues that Mother should not have been awarded any attorney fees because she rejected Father's reasonable settlement offer. Yet, Father cites no authority explaining how his offer, which would have required Mother to agree to move the children to Colorado, was so reasonable that its rejection would preclude the award of her attorney fees.

16

conclusions of law "lacked references to specific evidence, testimony, and applicable legal authority" and "deprived [him] of the procedural right to request additional or amended findings." We find these points meritless.

First, nothing shows that the trial court failed to exercise its independent judgment or reasoning. The trial court issued a letter ruling and requested Mother to prepare proposed findings. "[T]he trial court has the discretion to prepare and file findings in support of its judgment as it sees fit. . . . Certainly, the Texas Rules of Civil Procedure do not prohibit the trial court from adopting a party's proposed findings." *Warriner v. Warriner*, 394 S.W.3d 240, 246 (Tex. App.—El Paso 2012, no pet.); *see Vickery v. Comm'n for Law. Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[T]he trial court, as a matter of practice, usually invites the prevailing party to prepare proposed findings and conclusions based upon its rulings."); *Mustafa v. Asim*, No. 03-23-00018-CV, 2024 WL 5241054, at *9 (Tex. App.—Austin Dec. 20, 2024, no pet.) (mem. op.) ("Thus, to the extent [Appellant] is contending that the trial court's verbatim adoption of [the prevailing party's] proposed findings was inherently erroneous, we do not find any error."); *In re A.W.L.*, No. 05-16-00916-CV, 2018 WL 446421, at *3 (Tex. App.—Dallas Jan. 17, 2018, no pet.) (mem. op). As a result, we overrule this issue.

Next, Father argues that the trial court's findings did not refer to specific evidence and lacked citation to legal authority, but a trial court's findings of fact and conclusions of law are

17

not required to take a particular form.[9]

Last, although Father argues he was denied the chance, the record shows that Father had the opportunity to seek amended or additional findings but did not do so.[10]

## VII. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:      June 13, 2025
Date Decided:        August 7, 2025

---

[9]Moreover, "because the purpose of findings of fact is to discern the basis of the trial court's judgment, an appellant is not harmed by the absence of findings if the basis of the trial court's judgment is clear." *SMI/USA, Inc. v. Profile Techs., Inc.*, 38 S.W.3d 205, 209 (Tex. App.—Waco 2001, no pet.) (citing *Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 256 (Tex. 1984)).  Here, it was clear that the trial court determined that moving the children to Colorado was not in the children's best interests based on Mother's and Clegg's testimony.

[10]Illustrating that he had the opportunity to request additional or amended findings, Father argues

> [T]he district court filed its signed "Findings of Fact and Conclusions of Law" under the title "Mother's Proposed Findings of Fact and Conclusions of Law" . . . . This mislabeling created significant procedural confusion, as it prevented notification to Appellant regarding this filing and led to Appellant not knowing that the court had issued its signed findings.  As a result, Appellant was deprived of the opportunity to request additional or amended findings under Texas Rule of Civil Procedure 298 prior to appeal, which is a critical procedural right designed to ensure that the trial court's findings are sufficiently detailed to allow for meaningful appellate review.

The record shows there was no such mislabeling.  The trial court's signed document is titled "Findings of Fact and Conclusions of Law."
Moreover, "[a]dditional findings and conclusions are not required if they are merely evidentiary, or aimed at tying down the court's reasoning rather than its conclusions." *Stuckey Diamonds, Inc. v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 212, 213 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Father does not show what additional findings were required and appears to argue that he wanted the trial court to provide additional reasoning.
To the extent Father's brief can be read to raise a challenge to the specificity of the trial court's findings, Father's failure to file additional requests under Rule 298 of the Texas Rules of Civil Procedure has waived any such complaint.  *See Ponce v. Comm'n for Law. Discipline*, No. 04-20-00267-CV, 2022 WL 1652147, at *1 (Tex. App.—San Antonio May 25, 2022, no pet.) (mem. op.); TEX. R. CIV. P. 298.